THE HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AUBRY MCMAHON,

                Plaintiff,

      vs.

WORLD VISION, INC.

              Defendant.

CASE NO. 2:21-CV-00920-JLR

DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND
SUPPORTING MEMORANDUM

*NOTE ON MOTION CALENDAR:*
*May 5, 2023*

DEF. WORLD VISION'S MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:21-CV-00920-JLR

Page i

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

# TABLE OF CONTENTS

I.    OVERVIEW. ...........................................................................................1

II.   ROE OVERVIEW: *SPENCER* & *GARCIA* .................................................2

III.  FACT OVERVIEW: DECISIVE ISSUES OF RELIGIOUS CHARACTER. ...........3

   A.  Religious Nature of the Employer: *Primarily* Religious (ROE/U.S. Const.). ......3

   B.  Religious Nature of the Job: *Ministerial* (Ministerial Exception). ........................5

   C.  Religious Nature of this Dispute: What Is Christian Love and Marriage? .........6

   D.  Religious Nature of Misconduct: Plaintiff's Actions Defied WV Policy. ............8

   E.  Religious Nature of Religious Discrimination as a Defense (*Spencer 2.0*). ..........9

IV.   GOVERNING LEGAL STANDARDS. .......................................................9

V.    ARGUMENT. .....................................................................................10

   A.  The Court Lacks Jurisdiction to Resolve This Theological Dispute. .................11

   B.  Plaintiff's Federal Claim Lacks a Valid Basis and Causation. ...........................13
     1. Step One: Prima Facie Case (Untenable Here). ...............................................13
     2. Step Two: Legitimate, Nondiscriminatory Reasons (Several Here)...............14
     3. Step Three: Pretext (Foreclosed Here, and None in Any Event). .................15

   C.  Even If Viable, the Federal Claim Is Barred by Title VII's Section 702 ROE.....16
     1. The ROE Applies Broadly. .............................................................................16
     2. The ROE Bars All Claims (Not Just Religion-Based Claims). .........................18
     3. The ROE Precludes Plaintiff's Claim in This Case..........................................19

   D.  Both Claims Are Barred by Four Separate First Amendment Doctrines. .........20
     1. Both Claims Are Barred by the Religious Autonomy Doctrine.....................22
     2. Both Claims Also Are Barred by the Ministerial Exception. ..........................23
     3. Both Claims Also Fail Strict Scrutiny Under Two Doctrines. ........................28

   E.  Plaintiff's State Claim Also Is Barred by the State ROE......................................34

VI.   CONCLUSION. ..................................................................................36

DEF. WORLD VISION'S MOTION      Page ii      Ellis | Li | McKinstry
FOR SUMMARY JUDGMENT                      1700 Seventh Avenue, Suite 1810
CASE NO. 2:21-CV-00920-JLR                    Seattle, WA 98101-1820
                                            206.682.0565  Fax: 206.625.1052

Defendant World Vision, Inc. ("World Vision" or "WV") requests summary judgment in its favor in this action alleging sex-based discrimination under Title VII of the Civil Rights Act of 1964 and the Washington Law Against Discrimination ("WLAD"). This Court dismissed a similar case involving World Vision in 2008. *Spencer v. World Vision, Inc.*, 570 F.Supp.2d 1279 (W.D.Wash. 2008), *aff'd as amended on denial of reh'g en banc*, 633 F.3d 723 (9th Cir.), *cert. denied*, 565 U.S. 816 (2011). The same result is required here.[1]

## I.   OVERVIEW.

World Vision rescinded Plaintiff's job offer after she disclosed her same-sex marriage ("SSM"). The reason is undisputed: enforcement of WV's prohibition against "sexual conduct outside the Biblical covenant of marriage between a man and a woman." MF ¶¶41, 42-46; Compl. ¶5.16; Answer ¶5.16; Pl.'s Dep.; SW-01, at 238. In response, Plaintiff has asserted two sex-related claims, one under Title VII (and *Bostock v. Clayton Cty.*, 140 S.Ct. 1731 (2020)) and one under WLAD. Both claims are inextricably premised upon her disagreement with WV's biblical understanding of Christian love and marriage (*infra* at 6-7)—a religious dispute beyond court jurisdiction. In any event, Title VII and WLAD each contain a religious organization exemption ("ROE") to protect such "religious convictions." *Id.* at 1753.

---

[1] *Spencer's* key factual findings about WV are reaffirmed as currently accurate via the attached Declarations of Scott Ward ("**SW**"), Melanie Freiberg ("**MF**"), and Shannon Osborne ("**SO**"). Their authenticated exhibits are denoted, e.g., SW-01 for SW-Exhibit 1. References to a paragraph also refer to Exhibit(s) referenced in that paragraph, e.g., MF ¶7 incorporates by reference Exhibits MF-01 and MF-02 therein.

This is not a typical discrimination case where a secular employer is accused of invidious discrimination. Rather, this case is about a deeply religious employer exercising its religious freedom in staffing. The key issues were decided by this Court and the Ninth Circuit in *Spencer*. Plaintiff's claims cannot be resolved in her favor because they involve (a) a theological dispute and (b) an employment decision protected by the First Amendment and by the ROEs. Based on facts that are either undisputed or indisputable, WV is entitled to judgment on both claims.

## II.   ROE OVERVIEW: *SPENCER* & *GARCIA*.

The Religious Organization Exemption belongs to the *religious organization*—the employer—and is based solely on *its* religious faith, not the employee's. *Spencer* and *Garcia v. Salvation Army*, 918 F.3d 997 (9th Cir. 2019) govern here.

In *Spencer*, WV terminated employees who "denied the deity of Jesus Christ." 570 F.Supp.2d at 1282. In *Garcia*, Salvation Army terminated an employee after she stopped attending its religious services. 918 F.3d at 1002. In both cases, former employees alleged illegal religious discrimination *as claims*. In both cases, religious employers invoked their religious standards *as defenses*. Using different tests, each panel upheld summary judgment for the employer based on the ROE, which "permits religious organizations to discriminate based on religion." *Id*. at 1006.

The *Spencer* panel aligned with this Court on the facts. "World Vision, Inc. is a nonprofit Christian humanitarian organization," 570 F.Supp.2d at 1281, whose "relief efforts flow from a profound sense of religious mission." 633 F.3d at 741. It "explicitly and intentionally holds itself out to the public as a religious institution," where

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

"religion pervades the workplace." *Id*. Its "Christian witness is integrated into [and] communicated as part of [all it] does," *id*. at 739, and its "overt Christianity is especially evident to those applying for" jobs. *Id*. The panel affirmed this Court's judgment that WV's "purpose and character are primarily religious," 570 F.Supp.2d at 1289 (quoting *EEOC v. Townley Engineering*, 859 F.2d 610, 618 (9th Cir. 1988)), under a revised test:

> [W]orld Vision, Inc. qualifies [for the ROE since] it **[1]** is organized for a religious purpose, **[2]** is engaged primarily in carrying out that religious purpose, **[3]** holds itself out to the public as an entity for carrying out that religious purpose, and **[4]** does not engage primarily or substantially in the exchange of goods or services for money beyond nominal amounts.[2]

The *Garcia* panel used this four-part test. It also used *Townley's* primarily religious test, *Garcia,* at 1003-04, as this Court had in *Spencer*. Whether *Garcia* is viewed as modifying *Spencer* or reasserting *Townley*, World Vision meets every ROE test.

### III. FACT OVERVIEW: DECISIVE ISSUES OF RELIGIOUS CHARACTER.

This case rests on five religious facts or traits. All are undisputed or indisputable. They are the religious character or nature of (A) the employer, (B) the job, (C) the dispute, (D) the employee's misconduct, and (E) the free exercise defense.

### A. Religious Nature of the Employer: *Primarily* Religious (ROE/U.S. Const.).

*Spencer's* findings ordain the outcome here. First, they prove WV's ongoing entitlement to the ROE under *Spencer* and *Garcia* by establishing that WV (1) exists for a (primarily) religious purpose, (2) is engaged primarily in carrying out that purpose

---

[2] 633 F.3d at 724. *Spencer's* majority includes the per curiam plus Part I (intro) and Part II (general legal analysis) of Judge O'Scannlain's three-part opinion. *Id*. at 741 (Kleinfeld, J.) ("I concur in Parts I and II of Judge O'Scannlain's" opinion). It also includes the factual findings in Part III (ROE test) that sustains the per curiam holding. It only excludes a portion of Part III.

Page 3

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

(evincing its primarily religious character), (3) holds itself out to the public as such, and (4) does not engage in certain commerce beyond nominal amounts. Second, they prove WV's entitlement to First Amendment protection.

WV is a "church" under federal tax law and exists exclusively for religious purposes. *Spencer*, 570 F.Supp.2d at 1286-87 (quoting WV Articles and Bylaws); *accord* MF ¶¶19, 27(b). "[P]rospective employees are informed" that "'our faith in Jesus [is] at the heart of all we do,'" and "'[f]oundational to our work is the commitment to a shared faith by staff [and] a common understanding of how that faith is lived out day-to-day.'" *Id.* at 1282; 1287-88 (Christian character and activities of WV and its employees); *accord* MF ¶¶25, 27(c)&(d). This Court held:

> [All] nine factors demonstrate[ that World Vision's] purpose and character are primarily religious. Plaintiffs have not shown [a] genuine issue of material fact on [its] qualification for the [ROE. Thus, it is] exempt from Title VII. [Id. at 1289 (emphasis added).]

The appellate panel affirmed this Court's judgment, ruling that WV met the panel's four-part test, based on the facts set out in the lead opinion. 633 F.3d at 736-41.

> Even a cursory review of World Vision's [foundational documents] reveal explicit and overt references to a religious purpose. [This includes] the commitment to 'continually and steadfastly uphold and maintain the following statement of faith,' which begins: 'We believe the Bible to be the inspired, the only infallible, authoritative Word of God.'

*Id.* at 736; *accord* MF ¶¶20-22, 25, 27(e)&(f), 45, 54 (www.worldvision.org/statement-of-faith). All its core "principles are avowedly religious." *Id.* at 737; *accord* MF ¶27(f).

> World Vision ['expresses its] Christian faith accurately and with integrity' [and] 'always identifies itself [as] Christian[.]' [E]mployees are to ask themselves, 'Would anyone who read this know that World Vision is a Christian organization?' ['Our witness is] NOT AN ADD-ON.

> Because we demonstrate our faith through life, deed, word, and sign, our Christian witness is integrated into [and] communicated as part of everything [we do].'

*Id*. at 738-39; *accord* MF ¶¶26, 27(g), 36. "This overt Christianity is especially evident to those applying for employment[.]" *Id*. "[P]rospective employees [are] specifically requested to describe their 'relationship with Jesus Christ'" and are "informed that employment is contingent upon" their faithfully following Christ. *Id*. at 739-41. *Accord* MF ¶¶25, 27(h). WV's "relief efforts flow from a profound sense of religious mission [and] it explicitly and intentionally holds itself out to the public as [such]." *Id.* at 739-41. *Accord* Answer ¶5.8; MF ¶¶25, 27(d)(j)&(l).[3]

## B. Religious Nature of the Job: *Ministerial* (Ministerial Exception).

On January 5, 2021, WV offered Plaintiff the job she applied for: "DSR Trainee." Offer Letter, MF-03 (P0009). If she passed 9-11 weeks training, she would join Donor Contact Services ("DCS"). *Id*.[4] She would tell WV's supporters about its religious activities, especially its program that connects donors to children to support and pray for the children, who also may wish to "learn about the Christian faith." 633 F.3d at 737. According to her own evidence, she would:

> Help carry out our Christian organization's mission, vision, and strategies. Personify the ministry of [WV] by witnessing to Christ and ministering to others through life, deed, word and sign. [K]eep Christ central in our individual and corporate lives. Attend and participate in the leadership of devotions, weekly Chapel services, and regular prayer. [Be] sensitive to Donor's needs and pray with them when appropriate.

---

[3] For readability, 'internal quotation marks' are omitted from *Spencer* excerpts hereinafter.

[4] "**DCSR**" herein means DCS Representative ("DSRT" while in Training). *See* SO ¶6-7; MF ¶5.

DEF. WORLD VISION'S MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:21-CV-00920-JLR

Page 5

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

Job Posting-2020, SO-01 (P0013-15). In addition to "participat[ing] in the leadership [of] regular prayer" and "pray[ing] with" donors, *id.*, Plaintiff would be a "crucial member" of DCS and a "key liaison and 'voice of World Vision' to our donors and the general public." Job Posting-2022, SO-11 (WV184).[5] Finally, she would reflect WV's faith and ministry to its donors—its lifeblood. Viewing a DCS-led chapel service will leave no doubt. See evidence discussed *infra.*

### C. Religious Nature of this Dispute: What Is Christian Love and Marriage?

Like WV, Plaintiff professes to be "Christian" and to believe the Bible is the "word of God." Pl.'s Dep., SW-01, at 12-17, 165. She agrees that WV "get[s] to say [the] employees they want to hire … are Christian," *id.* at 167, and affirm they are "Christian [and] believe in the Apostle's Creed," because "those are things that most … if not all, Christians would agree with and abide by and live by," *id.* at 164. Plaintiff agrees that WV could "require that its employees believe in the Bible," and "in the Trinity, Father, Son, and Holy Spirit," and terminate on this basis because it "want[s its] employees to believe in the Apostles' Creed." *Id.* at 176. She agrees "that keeping Christ central in our lives is important and especially also in the corporate life." *Id.* at 174; *see id.* at 157, 160, 164, 168. The latter requirement is "huge[ly] important," *id.* at 164, so much so that "World Vision could terminate [anyone who] didn't keep Christ central in our individual and corporate lives" if WV "were able to prove it." *Id.* at 173.

---

[5] The 2022 Job Posting contains clarifying but insubstantial differences. *See* SO ¶24 & n.1.

DEF. WORLD VISION'S MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:21-CV-00920-JLR

Page 6

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

All that is agreed.[6] Where the parties disagree is the biblical doctrine of Christian love and marriage.

World Vision policy defines these concepts from the Bible as the "authoritative Word of God." *Spencer*, 633 F.3d at 738. WV seeks to honor God by requiring all staff to "[f]ollow the living Christ, individually and corporately in faith and conduct, publicly and privately, in accord with the teaching in His Word (the Bible)." MF ¶¶38, 32 (CCW Policy). Thus, World Vision requires that staff "behavior [be] consistent with the teachings of Scripture." MF ¶¶39, 33 (BECC Policy). Because it is "impossible … to identify every form of behavior that we understand the Bible defines as acceptable and unacceptable to God," WV provides Standards of Conduct to "clarify expectations and assist candidates/employees in deciding whether or not WVUS is the right place for them to serve the Lord." MF ¶40 (SOC).[7] One such behavior is sexual conduct.

World Vision defines *marriage* as the "Biblical covenant … between a man and a woman." MF ¶¶41, 42-46 (SOC). In WV's view, the Bible confines the "express[ion of] sexuality solely within a faithful marriage between a man and a woman." MF ¶42. WV seeks to "honor this Biblical model of a monogamous heterosexual marriage." MF ¶¶42, 47. For WV, any sexual conduct outside this *biblical covenant*—"being sexually active with someone other than your spouse of the opposite sex"—is a sin and, like any other sin, requires "repentance when we fail." MF ¶44. WV believes "all have

---

[6] Plaintiff also believes she met WV's Christian requirements. *Id*. at 155-57.

[7] See also the SOC in effect during *Spencer*: SOC of 3/31/2007 at §II(K), SW ¶8 at SW-06 (WV2371) and SW-07 (WV2625). See also SW-08 (WV2775-79) (Dep. Tr. discussing SOC).

sinned," but that Christians, when they sin, must "return" to God "in repentance." *Id.*
To WV, SSM reflects "open, ongoing, unrepentant" sin contrary to its "deeply held
belief that marriage is a Biblical covenant between a man and a woman." *Id.*[8]

Plaintiff disagrees. She believes marriage, from "a religious standpoint," is
"who you love." Pl.'s Dep., SW-01, at 21. She sees no "Bible verses or teachings …
around marriage" that disqualify or refute her views. *Id*. at 22. *See also id*. at 96-97, 164,
183. She simply has "a different understanding of what the unconditional love of Jesus
means," *id*., a "very different understanding of what the Bible says," *id*. at 97-98. She
believes that WV's understanding is "wrong." *Id*. at 183-84. *This theological dispute over
Scriptural interpretation is the only material factual "disagreement with World Vision that's
at issue in this lawsuit." Id*. at 184 (emphasis added).

**D. Religious Nature of Misconduct: Plaintiff's Actions Defied WV Policy.**

Plaintiff pleads two claims, one federal and one state, based on "sex, marital
status, and/or sexual orientation." Compl. ¶1.1. Both claims rest on one basis: WV's
policy that forbids "sexual conduct outside the Biblical covenant of marriage between
a man and a woman," MF ¶¶41, 42-46; *see also* Compl. ¶5.16; Answer ¶5.16; Pl.'s Dep.,
SW-01, at 238, to which "[a]ll staff shall be required to agree [and] comply." MF ¶46

---

[8] "People of any sexual orientation can work at World Vision as long as they agree with our
statement of faith and abide by our conduct policy. [We hire] people who live out biblical
standards of conduct. We expect all employees, regardless of sexual orientation, to live by
these standards, outlined in our conduct policy, including remaining celibate outside of
marriage. It's our deeply held belief that marriage is a Biblical covenant between a man and a
woman. This is made clear to people applying to work at World Vision. [O]ur <u>stance</u> [reflects]
our interpretation of Scripture." MF ¶45 (emphasis added). *See also id*. (listing policies).

DEF. WORLD VISION'S MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:21-CV-00920-JLR

Page 8

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

(Board Standing Policy) ("Failure to do so may require disciplinary action or termination."). It is undisputed that this policy embodies WV's deeply held belief in the "Biblical model of a monogamous heterosexual marriage." *Supra* at 6-7. Her same-sex marriage contravenes World Vision's biblical policy in several ways. First, entering into and living in a SSM defies World Vision's religious understanding of and policy regarding biblical marriage. Second, living openly in a SSM embodies an ongoing public stance promoting such conduct. Third, an SSM indicates sexual conduct that does not comply with WV's religious beliefs and conduct standards. MF ¶46.

**E.  Religious Nature of Religious Discrimination as a Defense (*Spencer 2.0*).**

In typical Title VII cases, secular employers differentiate unjustly due to employees' religion, e.g., a secular employer refusing to hire Muslims due to their religion. The employer's invidious "religious discrimination" establishes the employees' claims. In atypical cases as here, religious employers differentiate justly based on the employers' own religion, e.g., a Muslim ministry refusing to hire Christians because that would undermine its religious exercise. The employer's noninvidious "religious discrimination" establishes its defense—its legally guaranteed free exercise of religion. That was the case in *Spencer*. This case is *Spencer 2.0*.

**IV.  GOVERNING LEGAL STANDARDS.**

The standards for summary judgment are clear. *See Spencer*, 570 F.Supp.2d at 1282. "[D]ifferences of opinion on certain facts" are immaterial; only "*material* fact[s that are] genuinely in dispute" and "essential to [the] holding" can defeat summary judgment. *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S.Ct. 2049, 2056 n.1 (2020)

DEF. WORLD VISION'S MOTION        Page 9
FOR SUMMARY JUDGMENT
CASE NO. 2:21-CV-00920-JLR

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

("*OLG*"). The factors of *McDonnell Douglas v. Green*, 411 U.S. 792 (1973) ("*MD*") typically apply as part of a broader three-step test. *Opara v. Yellen*, 57 F.4th 709, 721 (9th Cir. 2023) ("*Opara*"). When religious employers are involved, courts "have generally protected the autonomy of religious organization[s] to hire personnel who share their beliefs." *SUGM v. Woods*, 142 S.Ct. 1094, 1094 (2022) ("*SUGM*") ("Alito Statement" on denial of cert.) (citing *Little v. Wuerl*, 929 F.2d 944 (3d Cir. 1991) ("*Little*"); *Kennedy v. St. Joseph's Ministries*, 657 F.3d 189 (4th Cir. 2011) ("*SJM*"); *EEOC v. Mississippi College*, 626 F.2d 477 (5th Cir. 1980) ("*Miss. Coll.*"); *Hall v. Baptist Mem'l Health Care*, 215 F.3d 618 (6th Cir. 2000) ("*Hall*"); *Killinger v. Samford Univ.*, 113 F.3d 196 (11th Cir. 1997) ("*Killinger*")).

## V.   ARGUMENT.

On January 5, 2021, after World Vision confirmed with Plaintiff its offer of DSR Trainee, MF ¶¶8-11, Plaintiff emailed WV that she and her wife were having a baby. *Id.* On January 8, 2021, WV rescinded its offer and explained why. *Id.* at ¶¶12-13. It is undisputed that "World Vision's policy on marriage as a biblical covenant between a man and a woman was the sole reason that the offer of employment was rescinded." Pl.'s Dep., SW-01, at 238; *id.* ("A: I think that it was rescinded because they found out that … I was married to a woman, which went against their beliefs. Q: So their beliefs were the reason that the offer was rescinded? A: Yeah."). Neither is there any dispute that this reason reflects "sincerely motivated religious exercise."[9]

---

[9] *Kennedy v. Bremerton School District*, 142 S.Ct. 2407, 2422 (U.S. 2022) ("***Kennedy***").

DEF. WORLD VISION'S MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:21-CV-00920-JLR

Page 10

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

Plaintiff asserts this reason was unlawful. But her case fails for five independent reasons. (A) There is no jurisdiction over this theological dispute. (B) Even if there were, Plaintiff's federal claim lacks a valid basis and causation under Title VII. (C) Even if viable, her federal claim is barred by Title VII's ROE. (D) In any event, both claims are barred by the First Amendment under three separate doctrines: (1) religious autonomy, (2) ministerial exception, and (3) strict scrutiny. (E) The ministerial exception also satisfies the WLAD ROE, further barring the state claim.

**A.  The Court Lacks Jurisdiction to Resolve This Theological Dispute.**

Under constitutional avoidance doctrine, the "proper sequence" starts with statutory questions. *Starkey v. Roman Catholic Archdiocese*, 41 F.4th 931, 945 (7th Cir. 2022) (Easterbrook, J., concurring) ("Easterbrook"). One exception is a threshold challenge to the Court's jurisdiction. That is the case here.

"[C]ivil courts exercise no jurisdiction" over cases involving "theological controversy." *Watson v. Jones*, 80 U.S. 679, 733 (1871) ("*Watson*"). Because "religious controversies are not the proper subject of civil court inquiry," courts must avoid this "religious thicket." *Serbian Eastern Orthodox v. Milivojevich*, 426 U.S. 696, 713 (1976); *accord Demkovich v. St. Andrew*, 3 F.4th 968, 981 (7th Cir. 2021) (en banc) ("*Demkovich*").[10]

"[T]he Religion Clauses protect religious institutions [in] matters 'of faith and doctrine' [against] government intrusion. [It] would obviously violate the free exercise of

---

[10] *See also Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 185 (2012) (unanimous) ("***Hosanna***"); *SUGM*, 142 S.Ct. at 1096 (Alito Statement); *Kedroff v. St. Nicholas Cathedral*, 344 U.S. 94, 116 (1952) ("***Kedroff***").

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

religion, and any attempt by government to dictate or even to influence such matters would constitute [an] establishment of religion. The First Amendment outlaws such intrusion." *OLG*, 140 S.Ct. at 2060 (citations omitted). The intrusion is categorically barred, without judicial scrutiny or balancing. This bar is "jurisdictional."[11]

Plaintiff does not dispute the sincerity of WV's religious views on sexual conduct and the "Biblical covenant of marriage." She agrees that some religious requirements are "huge[ly] important" and that WV may terminate employees for some such failures. *Supra* at 6. But she asserts that WV's marriage policy misinterprets the "Bible [that] being gay is a sin," Pl.'s Dep., SW-01, at 96, reflecting "very strict … biblical views," *id*. at 115, that result from having "picked and chosen parts of the Bible [to agree or] disagree with." *Id*. at 96-97. In her view, such "strict" "biblical views" disregard the "unconditional love" of Christ and fail to "keep Jesus' love at the center." *Id*. at 182-83. Instead, she believes "Christianity, just like sexuality or any religion, is fluid." *Id*. at 177. *See also id*. at 93-99, 182, 201, 208-09, 257-60.

Plaintiff has "a different understanding of what the unconditional love of Jesus means," *id*. at 183, and a "very different understanding of what the Bible says," *id*. at 97-98, and believes World Vision's understanding is "wrong," *id*. at 183-84. This theological dispute is "central" to Plaintiff's "disagreement with World Vision that's at issue in this lawsuit." *Id*. at 184. Courts cannot enter this "religious thicket."

---

[11] *Moon v. Moon*, 431 F.Supp.3d 394, 404 (S.D.N.Y. 2019), *aff'd as modified*, 833 Fed.Appx. 876 (2d Cir. 2020), *cert. denied*, 141 S.Ct. 2757 (2021).

### B. Plaintiff's Federal Claim Lacks a Valid Basis and Causation.

If jurisdiction exists to proceed at all, Plaintiff must raise "a genuine issue" that rescission of her job offer "was due in whole or in part to her" sex. *Opara*, 57 F.4th at 728. "[S]taving off a motion for summary judgment on disparate treatment claims under … Title VII entails three steps" that may employ the burden-shifting framework of *McDonnell Douglas*. *Id.*

### 1. Step One: Prima Facie Case (Untenable Here).

Plaintiff may establish her prima facie case with (1) direct evidence, (2) circumstantial evidence, or (3) the applicable *MD* factors. *Opara*, at 722. A prima facie case is not possible here.

First, Plaintiff's case has no valid basis because Title VII does not protect her class or activity. Neither sexual conduct outside of biblical marriage, nor the class of those who promote it, is "protected by Title VII." *Curay-Cramer v. Ursuline Acad.*, 450 F.3d 130, 136 (3d Cir. 2006) (abortion advocacy not "activity protected by Title VII"). Second, and consequently, her conduct disqualifies her for the position under WV's standards of conduct. Third, such standards do not result in similarly situated individuals being treated differently. Fourth, and relatedly, she cannot show causation. Since Title VII bans discrimination *because of* sex, 42 U.S.C. §2000e-2(a)(1), Plaintiff must show WV would not have rescinded her offer "but for" her sex—that it was based on "actions or attributes it would tolerate in an individual of another sex." *Bostock*, 140 S.Ct. at 1740; *id.* (using *but for* 26 times). She cannot. WV rescinded her offer because of her *sexual conduct outside biblical marriage* and such conduct (or its open

DEF. WORLD VISION'S MOTION    Page 13
FOR SUMMARY JUDGMENT
CASE NO. 2:21-CV-00920-JLR

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565 Fax: 206.625.1052

promotion) required the same result regardless of gender (or orientation). *See* MF ¶¶30-51; *Maguire v. Marquette Univ.*, 814 F.2d 1213, 1218 (7th Cir. 1987) (given plaintiff's abortion stance, employer "would have reached the same decision even if she were a man").[12] As Plaintiff "cannot satisfy the 'but for' standard of causation [her] claim of sex discrimination under Title VII fails as a matter of law." *Id.*[13]

### 2. *Step Two: Legitimate, Nondiscriminatory Reasons (Several Here).*

Even if a prima facie case exists, WV has articulated a "legitimate, nondiscriminatory reason" well recognized by courts. *See, e.g., Cline v. Catholic Diocese*, 206 F.3d 651, 658 (6th Cir. 1999) (religious employer may enforce its religious code of conduct); *Boyd v. Harding Acad.*, 88 F.3d 410, 414 (6th Cir. 1996) (same). Such reasons remain "legitimate" post-*Bostock* under Title VII and Title IX.[14] Since World Vision's

---

[12] WV would have reached the same decision once Plaintiff's public stance came to light, as she is a "vocal advocate for a conflicting viewpoint." *Green v. Miss USA*, 52 F.4th 773, 805 (9th Cir. 2022) ("**Green**") (VanDyke, J., concurring). Plaintiff regularly has "publicly engaged in conduct regarded by [WV] as inconsistent with its religious principles." *Little*, 929 F.2d at 951; *accord SJM*, 657 F.3d at 192; *Hall*, 215 F.3d at 624. *See generally, e.g.,* Bonfire, *Just Be*, https://www.bonfire.com/store/just-be (sales of Plaintiff's "Just Be" designs featuring her SSM and advocating related views). Plaintiff testified of such advocacy, Pl.'s Dep., SW-01, at 63-85, including that she and her wife are pursuing this very lawsuit "because we felt [obligated to do so] as advocates [of] the LGBTQ community," *id.* at 242, "so much so [that] when World Vision offered us a settlement [we] said we are not taking it." *Id. See also generally, e.g.,* @GruenWeddings, https://twitter.com/GruenWeddings/status/1109508257565966337 ("Wedding Experts Live Podcast" "joined today by Aubry McMahon who says she [was] rejected by [a] wedding venue"); David Sentendrey, *Lesbian Couple Says SC Venue Turned Them Away*, Queen City News (Mar. 6, 2019), https://www.qcnews.com/news/lesbian-couple-says-sc-wedding-venue-turned-them-away (TV news interviews of Plaintiff and her wife).

[13] *Bostock* did not disturb conduct policies, "holding [only] that employers are prohibited from firing employees on the basis of homosexuality or transgender status." 140 S.Ct. at 1753. *See Bear Creek Bible Church v. EEOC*, 571 F. Supp. 3d 571, 623 (N.D. Tex. 2021) ("**Bear Creek**").

[14] Post-*Bostock* cases include, *e.g., Maxon v. Fuller Theological Seminary*, 2021 WL 5882035 (9th Cir. 2021) (unpub.) ("**Maxon**") (Title IX) (*Fairless v. Harker*, 2021 WL 1895347, at *5 (W.D.Wash.

burden "is one of production [only and] involve[s] no credibility assessment, [its] proffered legitimate, nondiscriminatory reasons for its action are sufficient." *Opara*, at 723-26 (citation omitted).

### 3. Step Three: Pretext (Foreclosed Here, and None in Any Event).

In any event, Plaintiff cannot show that WV's articulated reason is pretextual, *Opara*, 57 F.4th at 723-24, for at least two reasons. First, pretext inquiry is prohibited here. Since WV has presented "convincing evidence" that its policy is based on religious precepts, there can be no "investigat[ion of] pretext," *EEOC v. Fremont Christian Sch.*, 781 F.2d 1362, 1366 (9th Cir. 1986), i.e., whether such precepts are "false," *Opara*, 57 F.4th at 724, mistaken, or illogical. Plaintiff "cannot carry [her] burden at step three by instigating a "debate over whether [WV] really believes its position on marriage, or what [its] precise contours [are.]" *Butler*, 609 F.Supp.3d at 201.

Second, even if inquiry into pretext were permissible, there is nothing in the record "creating a genuine issue as to whether [WV's] proffered reasons were 'false' or whether her termination was due in whole or in part to her [sex]." *Opara*, 57 F.4th at 729. Instead, "it is undisputed" that Plaintiff's SSM contradicts WV's biblical marriage/conduct policy "even if [Plaintiff] disagrees" with that policy or its

2021) ("unpublished decisions have persuasive value and may be relied on") (citing Ninth Cir. R. 36-3)); **Bear Creek** (Title VII); *Butler v. St. Stanislaus Cath. Acad.*, 609 F.Supp.3d 184 (E.D.N.Y., 2022), *appeal dismissed* (2d Cir. Aug. 25, 2022) ("**Butler**") (Title VII); *see Fleetwood v. WSU*, 2022 WL 2311252, at *11 (E.D.Wash. 2022) (*MD* applies to a "Title IX claim as it would [to] summary judgment for a Title VII claim"). In *Butler*, as here, the employer's action "was predicated on Butler's statement of intended conduct, rather than his sexuality itself," 609 F.Supp.3d at 189, "a seeming rejection of the Church's current position on same-sex marriage." *Id.* at 204.

DEF. WORLD VISION'S MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:21-CV-00920-JLR

Page 15

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

theological basis. *Id.* at 727. Indeed, *Opara* rejected the plaintiff's "conclusory allegations" that she would have fared better if "she were Hispanic" as "*insufficient*" to "raise a genuine issue of fact regarding an employer's motive." *Id.* at 728. Similarly, no conclusory allegations involving sex or sexual orientation can suffice here.

This "third step is fatal to [Plaintiff's] claim, as she fails to prove that [WV's] proffered reasons for termination were pretext for discrimination based on [sex]." *Id.*

**C.  Even If Viable, the Federal Claim Is Barred by Title VII's Section 702 ROE.**

WV continues to meet all applicable ROE tests. This includes the four-part *Spencer* test, 633 F.3d at 724, and, since WV's "purpose and character" remain "primarily religious," 570 F.Supp.2d at 1289, the *Garcia* test, 918 F.3d at 1003-04. The ROE bars Plaintiff's *sex-based* claim for multiple independent reasons.

### 1.  *The ROE Applies Broadly.*

Section 702's ROE provides: "This subchapter shall not apply … to a religious corporation … with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by such corporation … of its activities." *Corp. of Presiding Bishop v. Amos*, 483 U.S. 327, 329 n.1 (1987) (quoting 42 U.S.C. §2000e-1(a)). Thus, "with respect to the employment of individuals of a particular religion," Congress "'painted with a broad[] brush, exempting religious organizations from the *entire subchapter* of Title VII.'" *Garcia*, 918 F.3d at 1004 (citation omitted; emphasis in original); *Starkey*, 41 F.4th at 946 (Easterbrook).[15] Congress also

---

[15] "This *subchapter*" and "This *title*" both refer to "all of Title VII." *See also* Esbeck, *Federal*

DEF. WORLD VISION'S MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:21-CV-00920-JLR

Page 16

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

defined "religion" broadly to include "'all aspects of religious observance and practice, as well as belief.'" *Id.* (quoting 42 U.S.C. §2000e(j)). "Read plainly then, Title VII does not apply to religious employers when they employ individuals based on religious observance, practice, or belief." *Bear Creek*, 571 F.Supp.3d at 590.

The ROE "alleviat[es] significant governmental interference with the ability of religious organizations to define and carry out their religious missions," *Amos*, 483 U.S. at 35, in three ways. First, the ROE covers all types of *jobs*. *Spencer*, 633 F.3d at 726 n.3; *Little*, 929 F.2d at 950 ("all employees," not just those "engaged in religious activities"); *Amos*, 483 U.S. at 330 (janitor at gym). Second, the ROE covers all types of *claims* because it exempts qualified employers from *all* of Title VII. *Garcia*, 918 F.3d 1005-06. Third, the ROE includes both *conduct and belief*. 42 U.S.C. §2000e(j).[16] It protects the "decision to terminate an employee whose conduct or religious beliefs are inconsistent with those of its employer." *Hall*, 215 F.3d at 624; *accord SJM*, 657 F.3d at 192. This "straightforward reading" of "702(a) permits a religious employer to require the staff to abide by religious rules," *Starkey*, 41 F.4th at 946 (Easterbrook), to enable them to "define and carry out their religious missions." *Amos*, 483 U.S. at 339.

---

*Contractors, Title VII, and LGBT Employment Discrimination: Can Religious Organizations Staff on Religious Basis?*, 4 OXFORD J.L. & RELIG. 368 (2015) ("**Esbeck**").

[16] Title VII tracks Free Exercise, which "protects religiously motivated conduct as well as belief." *FCA v. San Jose Unified Sch. Dist.*, 46 F.4th 1075 (9th Cir. 2022) ("**FCA**") (quoting McConnell, *The Origins and Historical Understanding of Free Exercise of Religion*, 103 HARV. L. REV. 1409, 1488 (1990)), *reh'g en banc granted, opinion vacated*, 59 F.4th 997, *injunction pending appeal granted*, 2023 WL 2754355 (9th Cir. Apr. 3, 2023) (en banc). The grant of this IPA indicates the court found a likelihood of success, and "[v]acated opinions remain persuasive … authority." *Spears v. Stewart*, 283 F.3d 992, 1017 n.16 (9th Cir. 2001).

DEF. WORLD VISION'S MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:21-CV-00920-JLR

Page 17

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

### 2. *The ROE Bars All Claims (Not Just Religion-Based Claims).*

The ROE exempts religious employers making religious decisions "'from the *entire subchapter* of Title VII.'" *Garcia*, 918 F.3d at 1004. If a "decision is founded on religious beliefs, then all of Title VII drops out." *Starkey*, 41 F.4th at 946 (Easterbrook). This "straightforward reading" permits termination "without regard to any of the substantive rules in Title VII," *id.*, including sex discrimination, as *Bostock* clearly contemplated. 140 S.Ct. at 1753-54. Plain meaning controls.[17]

Canons of construction require the same result. First, §2000e-1(a) (aka §702(a)) contains *two* exemptions: the ROE and an alien exemption. "*[N]one* of Title VII's substantive rules applies to aliens covered by §702(a). What is true for the alien exemption must be true for the [ROE]." *Starkey*, 41 F.4th at 947 (Easterbrook); *Bear Creek*, 571 F.Supp.3d at 591. Second, §2000e-1(a) must be read to avoid constitutional error. This "canon of constitutional avoidance counsels against [Plaintiff's] stringent interpretation of section 2000e-1 [since it] raises serious questions under both [Religion Clauses]." *Spencer*, 633 F.3d at 728-29 (citing *NLRB v. Catholic Bishop*, 440 U.S. 490, 500 (1979)). The Court must reject such a "constitutionally questionable interpretation." 633 F.3d at 729. "If World Vision qualifies for the exemption, it is entitled to terminate employees for exclusively religious reasons[.]" Id. at 726 n.3.

On facts resembling a "*Spencer 2.0*," the Ninth Circuit rejected SSM

---

[17] Compare the parallel ROE in the Americans with Disabilities Act. 42 U.S.C. §12113(d)(1) ("**ADA**"). If an exemption to employ "individuals of a particular religion" protects only against *religious-discrimination claims*, the ADA's ROE would be nonsensical, since the ADA prohibits only disability discrimination—*not* religious discrimination.

DEF. WORLD VISION'S MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:21-CV-00920-JLR

Page 18

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

discrimination under *Bostock* since Title IX's "religious exemption [shields] these religiously motivated decisions." *Maxon*, 2021 WL 5882035 at *2. *Maxon* dismissed *with prejudice* as "no additional facts" could save the "challenge to Fuller's differential treatment of same-sex marriages as compared to opposite-sex marriages, since Fuller's actions fell squarely within [the] exemption" and no court may "second-guess [Fuller's] interpretation of its own religious tenets." *Id*. at *3 (citing *Mitchell v. Helms*, 530 U.S. 793, 828 (2000)). "'Inquiry into religious views is not only unnecessary but also offensive.'" *Spencer*, 633 F.3d at 731 (quoting *Mitchell*).

### 3. The ROE Precludes Plaintiff's Claim in This Case.

WV's conduct standards are "religiously motivated," *Maxon*, 2021 WL 5882035 at *2, i.e., "rooted in religious belief," *Wisconsin v. Yoder*, 406 U.S. 205, 215 (1972), and WV is "entitled to terminate [for such] reasons." *Spencer*, 633 F.3d at 726 n.3.

These reasons are clear from the record. *See supra* at 4-7. WV believes "effective Christian witness is first expressed in the personal lives of staff[.]" Orange Book: Living Out Our Values, at 9, MF ¶53 and MF-29 (WV716). It thus requires a "common commitment to [its views of] biblical belief and conduct," *id.*, and reproves "[o]pen, ongoing, unrepentant sin." *Supra* at 7; MF ¶44. It requires "biblically-sound" behavior, MF-18 (WV35) (SOC), such as expressing "sexuality solely within a faithful marriage between a man and a woman," *supra* at 7; MF ¶42, to "honor the Biblical model of a monogamous heterosexual marriage." *Supra* at 7; MF ¶¶42, 47. It thus deems "same-sex marriages improper on doctrinal grounds." *Starkey*, 41 F.4th at 946 (Easterbrook). And it requires job seekers to agree to comply. *Supra* at 7-8; MF ¶46 (Standing Policy).

DEF. WORLD VISION'S MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:21-CV-00920-JLR

Page 19

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

These religious policies are vital to World Vision. *Supra* at 3-9; MF ¶¶25-51. In such cases, sex-based claims are barred. *See, e.g.*, *Curay-Cramer*, 450 F.3d at 141; *Miss. Coll.*, 626 F.2d at 485; *Bear Creek*, 571 F.Supp.3d at 590; *Maguire v. Marquette Univ.*, 627 F.Supp. 1499, 1506-07 (E.D.Wis. 1986), *aff'd on narrower ground*, 814 F.2d 1213, 1216 (7th Cir. 1987); *Henry v. Red Hill Evangelical Lutheran Church*, 201 Cal.App.4th 1041 (2011).[18]

**D. Both Claims Are Barred by Four Separate First Amendment Doctrines.**

This case is a nonjusticiable theological dispute. Even if justiciable, both claims are barred by the Constitution. The First Amendment gives "special solicitude to the rights of religious organizations." *Hosanna*, 565 U.S. at 189. This includes the freedom "to define their own doctrine, membership, organization, and internal requirements without state interference." *Demkovich*, 3 F.4th at 975.[19] This freedom is secured by the

---

[18] The asserted misconduct in *Little* was remarriage; in *Boyd*, *Cline*, and *Henry* it was sex outside marriage (evinced by pregnancy); and in *Maxon*, *Bear Creek*, *Butler*, and here it was sex outside biblical marriage (evinced by same-sex marriage). "[That] adherence to Roman Catholic doctrine produces a form of sex discrimination does not make the action less religiously based." *Starkey*, 41 F.4th at 947 (Easterbrook, J.). That is why *Fremont Christian* and *EEOC v. Pacific Press*, 676 F.2d 1272 (9th Cir. 1982) are inapplicable: neither case involved an employer's action that was "religiously based"—as here—on a credible religious tenet. Instead, "both have ill-considered obiter dictum that [702(a)] is available only when the employee's primary claim is for religious discrimination," Esbeck, *supra* note 16 at 393, i.e., "mere chance," *id.* at 376, and both ignore the plain language of 702(a) without analysis. *Id.* at 393-96, 380 & n.49. Where does this odd "limitation come from?" *Starkey*, 41 F.4th at 946 (Easterbrook). Such dicta is further eroded by later cases, such as *Bostock*, 140 S.Ct. at 1753-54 (ROE applies to sex claims, i.e., "cases like ours"); *id.* at 1749 (plain meaning controls); *Amos*, 483 U.S. at 339 (ROE covers "all activities of religious employers"); *Garcia*, 918 F.3d at 1004 (ROE exempts "religious organizations from the *entire subchapter* of Title VII."), *Spencer*, *Curay-Cramer*; *Bear Creek*; *Maguire*, *Henry*.

[19] The Supreme Court's strong protection of religious freedom continues. *See Roman Catholic Diocese v. Cuomo*, 141 S.Ct. 63 (2020) and **Tandon v. Newsom**, 141 S.Ct. 1294 (2021) (protecting religious gatherings from Covid restraints); **Fulton v. City of Phila.**, 141 S.Ct. 1868 (2021) (protecting religious foster care agency); **Ramirez v. Collier**, 142 S.Ct. 1264 (2022) (protecting religious inmate during execution); *Shurtleff v. City of Boston*, 142 S.Ct. 1583 (2022) (protecting

religious-autonomy and ministerial-exception doctrines. *See OLG*, 140 S.Ct. at 2060) ("The independence of religious institutions in matters of faith and doctrine [ensures] their autonomy with respect to internal management decisions [and] a component of this autonomy is the selection of the individuals who play certain key roles.").

The parent doctrine of "autonomy" turns on the religious nature of the *employer* and its *decision*. The subsidiary doctrine of "ministerial exception" turns on the religious nature of the *job*. As the latter applies to all "claims that impinge on protected employment decisions regarding 'a religious organization and its ministers,'" *Puri v. Khalsa*, 844 F.3d 1152, 1158 (9th Cir. 2017),[20] all "employment claims are precluded by the ministerial exception."[21] Since both doctrines are "based in the First Amendment, [both apply] to any federal or state cause of action that would otherwise impinge on the Church's prerogative[s]." *Werft*, 377 F.3d at 1100 n.1 (9th Cir). Thus, both of Plaintiff's claims, state and federal, are "flatly" barred. *Puri*, 844 F.3d at 1158. No compelling interest or balancing test can save them. *See OLG*, 140 S.Ct. at 2060.

Even if her claims could overcome that bar, both would fail two other doctrines

---

religious flag-raiser); *Carson v. Makin*, 142 S.Ct. 1987 (2022) (protecting religious schools regarding tuition aid); *Kennedy*, 142 S.Ct. 2407 (protecting prayer of football coach).

[20] Citing *Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 955 (9th Cir. 2004) and *Bollard v. Cal. Province of the Soc'y of Jesus*, 196 F.3d 940, 945 (9th Cir. 1999); *accord Starkey*, 41 F.4th at 943-44.

[21] *Orr v. Christian Brothers High Sch.*, 2021 WL 5493416, at *1 (9th Cir. 2021), (unpub.), *reh'g en banc denied*, 2022 U.S.App.LEXIS 3004, *cert. denied*, 143 S.Ct. 91 (2022) ("*Orr*") (dismissing all state and federal employment claims of former principal) (citing *Werft v. Desert Sw. Annual Conf.*, 377 F.3d 1099, 1100-01 (9th Cir. 2004) ("*Werft*"); *see Starkey*, 41 F.4th at 945 (citing *Puri*, *Elvig*, and *Bollard* to dismiss all claims that "litigate the employment relationship between the religious organization and the employee").

of the First Amendment. Laws that (a) unevenly burden religion or (b) infringe expressive association must survive strict judicial scrutiny. As Title VII and WLAD both contain secular exemptions, and as both infringe expressive association, neither can be applied to World Vision without narrowly tailored compelling interests. "And that, in turn, is the ballgame." *FCA*, 46 F.4th at 1096 (9th Cir.).

### 1. Both Claims Are Barred by the Religious Autonomy Doctrine.

Courts cannot decide issues of "conformity" to religious moral standards. *SUGM*, 142 S.Ct. at 1096 (Alito Statement) (quoting *Watson*, 80 U.S. at 733). "That is so because the Constitution protects religious organizations 'from secular control or manipulation.'" *Id.* (quoting *Kedroff*, 344 U.S. at 116). This doctrine protects their right to "'select their own leaders, define their own doctrines, resolve their own disputes, and run their own institutions.'" *Korte v. Sebelius*, 735 F.3d 654, 677 (7th Cir. 2013) (quoting Laycock, *Towards a General Theory of the Religion Clauses: The Case of Church Labor Relations and the Right to Church Autonomy*, 81 COLUM. L. REV. 1373, 1388-89 (1981)). "[T]he importance of securing religious groups' institutional autonomy, while allowing them to enter the public square, cannot be understated." *Whole Woman's Health v. Smith*, 896 F.3d 362, 374 (5th Cir. 2018) (forbidding intrusive discovery).

*Autonomy* is both Religion Clauses "work[ing] in unison" to protect "employment rights of religious organizations." *Demkovich*, 3 F.4th at 975. It is buttressed by related constitutional principles. "'[F]orcing a group to accept certain members may impair [its ability] to express those views, and only those views, that it intends to express.'" *Hosanna*, 565 U.S. at 200 ("Alito/Kagan" concurrence) (quoting

DEF. WORLD VISION'S MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:21-CV-00920-JLR

Page 22

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

*Boy Scouts v. Dale*, 530 U.S. 640, 648 (2000)). It applies regardless of the religiosity of a plaintiff's role, and it outweighs all competing interests, including "eliminating employment discrimination." *EEOC v. Catholic Univ.*, 83 F.3d 455, 467 (D.C. Cir. 1996).

Directly on point is *Bryce v. Episcopal Church*, 289 F.3d 648 (10th Cir. 2002) (cited with approval in *Hosanna*, 565 U.S. at 188 n.2). *Bryce* did not reach the "ministerial exception" because plaintiff's claims were precluded by the "broader church autonomy doctrine." *Id.* at 657, 658 n.2. Judicial intervention was barred because the personnel decisions about sexual conduct were "rooted in religious belief." *Id.* at 660 (quoting *Yoder*, 406 U.S. at 215); *accord Butler*, 609 F.Supp.3d at 199; MF ¶¶50-51 (explaining religious dimension of the decision-making process).

By not complying with WV's biblical Standards of Conduct, Plaintiff breached its "standard of morals," *Watson*, 80 U.S. at 733, via "misconduct [that] is 'rooted in religious belief.'" *Bryce*, 289 F.3d at 657. In sum, "[e]ven if [Plaintiff] did not qualify as a ministerial employee[,] summary judgment would be required [by] church autonomy [which] is broader [and applies] where (as here) the[re is] a religious reason for termination." *Butler*, 609 F.Supp.3d at 198.

### 2. Both Claims Also Are Barred by the Ministerial Exception.

"The Supreme Court has broadly defined what employment positions are eligible for [the ministerial] exception." *Orr*, 2021 WL 5493416 at *1. These include all staff who perform (a) "important religious functions," *Hosanna*, 565 U.S. at 192, or (b) "certain key roles." *OLG*, 140 S.Ct. at 2060. Prototypical staff are those who (i) "personify" an employer's beliefs, *Hosanna*, at 188, or (ii) serve as a "messenger" or

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

"voice for [its] faith." *Id.* at 199, 201 (Alito/Kagan); *accord OLG*, 140 S.Ct. at 2064 ("messenger"); *Starkey*, 41 F.4th at 940 (same); *id.* ("press secretaries"). Such staff need not be religious "leaders," need not "minister to the faithful," and need not do more than "simply relay religious tenets." *OLG*, 140 S.Ct. at 2067 n.26 (rejecting such requirements). Ministerial roles are defined by employers, not employees. *See id.* at 2066 (deference is due an employer's "definition and explanation of their roles" and their "role [in] the life of the religion").[22]

Titles mean little. "What matters, at bottom, is what an employee does," *OLG*, 140 S.Ct. at 2064, and "[w]hat an employee does involves what an employee is entrusted to do, not simply what acts an employee chooses to perform." *Starkey*, 41 F.4th at 941. What matters are her "job duties" and "responsibilities," as defined by "her employment documents," *id.*, including job description, contract, and handbook. *Id.* at 937-41. *See Hosanna* (using "duties" 11 times); *OLG* (using "responsibility[ies]" 14 times). Citing *Hosanna* and *OLG*, *Starkey* rejected the plaintiff's argument that she rarely performed religious duties. 41 F.4th at 941. Here, what matters are the employer-defined job duties that Plaintiff would have been *responsible for*. 140 S.Ct. at 2066.

This question has answers both general and specific. *Spencer* provides the

---

[22] *OLG* applied these principles to reverse two Ninth Circuit decisions that found "lay teachers" of "secular" subjects with no religious training or requirements other than a half-day conference insufficiently religious to qualify. OLG's rationale abrogates or erodes prior circuit precedent on the subject, such as *Puri*, *Elvig*, and *Bollard. But see Werft* (cited approvingly by *Hosanna*, 565 U.S. at 188 n.2). To the extent they have ongoing vitality, *Elvig* and *Bollard* support WV's case. *See Butler*, 609 F.Supp.3d at 200; *Tucker v. Faith Bible*, 36 F.4th 1021, 1027 n.2 (10th Cir. 2022); and *id*. at 1066 (Bacharach, J., dissenting).

DEF. WORLD VISION'S MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:21-CV-00920-JLR

Page 24

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

general answer. It found **<u>all</u>** World Vision staff responsible for: (1) confessing they are committed Christians (633 F.3d. at 739-40); (2) agreeing "wholeheartedly" with its core principles (*id.*); (3) "communicating [its] Christian faith [and] witness," which is "integrated [into] everything [it] does," "accurately and with integrity" (*id.* at 738); and (4) participating "regularly" in "prayer activities, [daily] devotionals, and weekly chapel services." 570 F.Supp.2d at 1288. Those requirements continue today, including the core element of *prayer*, MF at ¶¶25-27, 55; SO ¶¶11-13; *id.* at 14-41, which "unquestionably constitutes the 'exercise' of religion."[23] WV exists "only" to "spread" its "Christian faith" as "infallibl[y]" and "authoritative[ly]" established by "the Bible." 633 F.3d at 736. WV's workforce consists "only [of] Christians," 570 F.Supp.2d 1289–of whom it requires a "commitment to [this] shared faith [and] a common understanding of how that faith is lived out day-to-day," *id.* at 1282, empowering them to "live out their faiths in daily life."[24] Clearly, then, all staff are responsible for "important religious functions." *Hosanna*, 565 U.S. at 192.

The specific answer comes from indisputable evidence defining the DCS role Plaintiff sought. First, that role is "key." *OLG*, 140 S.Ct. at 2060. That is why 9-11 weeks of training are required to join DCS, whose "Mission Statement" begins, "***Consumed and called by Jesus Christ.***" SO ¶¶19. Second, "[b]eing a part of DCS means you are the ***Voice***, ***Face*** and ***Heart*** of World Vision." *Id.* Third, the role is utterly religious. *See*

---

[23] *Sause v. Bauer*, 138 S.Ct. 2561, 2562 (2018).

[24] *Kennedy*, 142 S.Ct. at 2421.

SO ¶¶19-48 (detailed explanation).

Plaintiff's own evidence proves this. Under the Job Posting she would have to:

> Help carry out our Christian organization's mission, vision, and strategies. Personify the ministry of World Vision by witnessing to Christ and ministering to others through life, deed, word and sign. [K]eep Christ central in our individual and corporate lives. Attend and participate in the leadership of devotions, weekly Chapel services, and regular prayer.

SO-01 (P0013-15); SO ¶22. She would interact all day with the ministry's donors, its lifeblood, always "sensitive to [their] needs and pray[ing] with them," *id.*, since transformation of donors remains as vital to WV as that of the children they sponsor. SO ¶¶23, 42-50. In sum, a DCSR is a "crucial member" of the DCS team and "key liaison and 'voice of World Vision" and would need to carry out these duties "persuasively and convincingly." SO ¶¶24, 57. Clearly, her "job did, and would have continued to, include important ministerial duties." *Butler*, 609 F.Supp.3d at 196.

These ministerial duties of a DCSR are demonstrated by five companywide chapel services led by DCS. *See* SO ¶¶25-36; MF ¶52. These services speak for themselves. The 2019 service vividly displays the DCS that Plaintiff sought to join,. SO-13, as DCS managers and DCSRs testify powerfully to the ministerial nature of their job duties and activities. SO ¶¶25-36. Clearly, DCS is no common call center. Praying with and being the "voice, face, and heart" of WV to countless callers is pivotal activity. *Id.* As a DCSR, Plaintiff's duties would include praying faithfully with donors, as illustrated by ten representative calls where DCSRs prayed with donors about their needs and the needs of the children they sponsor. SO ¶¶37-39. Sample "shout-outs" from DCS managers magnify this point. SO ¶¶40-41.

DEF. WORLD VISION'S MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:21-CV-00920-JLR

Page 26

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

1    As a DCSR, Plaintiff would meet the ministerial exception in many ways. First,

2  she would be a "key" "messenger" and "voice of World Vision." SO ¶¶17, 19, 24, 35-

3  36, 42, 57. Second, she would educate and "personify its ministry" to its callers. SO

4  ¶¶4, 22, 42, 57. Third, she would support donor transformation via "Christ's

5  transforming love, grace, and power." SO ¶¶23, 42-50. Fourth, she would combine

6  with likeminded colleagues to be "God's hands and feet" in the "body of Christ." SO

7  ¶¶35, 40-42. Fifth, she would perform "ministry" through fundraising itself. SO ¶43-

8  44. All this she would do "convincingly" to advance WV's "Christian" "mission,

9  vision, and strategies." SO ¶¶24, 45, 57. All day she would speak with donors and

10 colleagues amid opportunities to "[p]ray, pray again, and pray some more," seeking

11 God's blessing on WV, its donors, and its programs, as "resourced by Him." SO ¶¶15,

12 45-47. To do all this, she had to live it. SO ¶¶24, 48, 57; MF ¶¶23, 33-38, 48, 56.

13    "In the end, *OLG* commands that courts afford meaningful deference to [such

14 employer attestations of] ministerial duties." *Butler*, 609 F.Supp.3d at 197 (citing *OLG*,

15 140 S.Ct. at 2066). Any other view "would require the Court to disregard [World

16 Vision's] evidence—discussed above at length—that [Plaintiff] was obligated to live

17 [the mission] every day by word and deed." *Id.* at 196. "This evidence, when

18 considered holistically, is fatal to [her] claim." *Id.*

19    Plaintiff herself reinforces World Vision's case. She testified that her SSM and

20 beliefs would make her unfit to answer any donor questions about WV's beliefs on

21 marriage and sexual conduct beyond reciting WV policy from a script. *See* Pl.'s Dep.,

22 SW-01, at 201-03.

DEF. WORLD VISION'S MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:21-CV-00920-JLR

Page 27

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

Yet, Plaintiff was to "personify," *Hosanna*, 565 U.S. at 188, be a "voice" for, *id.* at 201 (Alito/Kagan), and be a "messenger" for WV's faith. *Id.* at 199; *accord OLG*, 140 S.Ct. at 2064; *Starkey*, 41 F.4th at 940. Any of these would suffice. But her role required more. It required her wholehearted assent—sharing WV's convictions—to perform and promote it "accurately and with integrity," "persuasively and convincingly," to donors, supporters, colleagues, and the public. She was to "live[ it] out day-to-day." Those were her responsibilities. They were religious. They were important. They were key to WV's mission. The ministerial exception applies.

### 3.   *Both Claims Also Fail Strict Scrutiny Under Two Doctrines.*

World Vision's "beliefs about marriage and sexuality fall within the ambit of the First Amendment," *FCA*, 46 F.4th at 1093, which protects "religious" "objections to gay marriage." *Id.* (quoting *Masterpiece Cakeshop v. Colo. Civil Rights Com'n*, 138 S.Ct. 1719, 1727 (2018)). "Although this is a civil lawsuit between private parties, the application of [law by] courts in a manner alleged to restrict First Amendment freedoms constitutes [state action]." *NAACP v. Claiborne Hardware*, 458 U.S. 886, 916 n.51 (1982) (citing *NY Times v. Sullivan*, 376 U.S. 254, 265 (1964)); *accord Cohen v. Cowles Media*, 501 U.S. 663, 668 (1991). Thus, the "Free Exercise Clause is applicable in private civil suits." *Listecki v. Official Comm. of Unsecured Creditors*, 780 F.3d 731, 741 (7th Cir. 2015) (citing *Hosanna* and *NY Times*); *accord Paul v. Watchtower Bible, 819 F.2d* 875, 880 (9th Cir. 1987) (citing *NY Times*); *Fratello v. Archdiocese of N.Y., 863 F.3d* 190, 204 (2d Cir. 2017) (citing *Hosanna*). This lawsuit injures freedoms of religion and expressive

DEF. WORLD VISION'S MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:21-CV-00920-JLR

Page 28

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

association and it "cannot survive" strict scrutiny. *FCA*, 46 F.4th at 1094.[25]

### a.   Both Claims Violate Free Exercise Protections.

The free exercise inquiry is controlled by *Tandon* and *Fulton*. In protecting at-home religious gatherings from pandemic restrictions, *Tandon* held that "regulations are not neutral and generally applicable, and therefore trigger strict scrutiny under the Free Exercise Clause, whenever they treat *any* comparable secular activity more favorably than religious exercise." 141 S.Ct. at 1296. In protecting a religious foster care agency from pressure to certify same-sex couples, *Fulton* held that the city "plain[ly] burdened CSS's religious exercise by putting it to the choice of curtailing its mission or approving relationships inconsistent with its beliefs." 141 S.Ct. at 1876. Exemptions to the city's policy subjected it to "the strictest scrutiny." *Id*. at 1881. "Put another way, so long as the government can achieve its interests in a manner that does not burden religion, it must do so." *Id*. "General applicability requires, among other things, that the laws be enforced evenhandedly." *Waln v. Dysart Sch. Dist.*, 54 F.4th 1152, 1159 (9th Cir. 2022). The reason for strict scrutiny "is obvious: if a government can easily grant an exemption, then the law stops being applied neutrally or generally." *FCA*, 46 F.4th at 1093 (applying *Tandon* and *Fulton*).

The secular exemptions in Title VII and WLAD compel the same result here. Title VII exempts businesses with fewer than 15 employees. It permits employers to fire employees with Communist affiliations, permits employers on or near Indian

---

[25] WV reserves its defenses under the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb-1 *et seq*. ("**RFRA**"), but does not seek summary judgment here based upon RFRA.

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

reservations to favor Indians, and exempts certain jobs due to bona fide occupational qualifications ("BFOQs"). 42 U.S.C. §2000e-2. WLAD has analogous exceptions. *See* RCW 49.60.040(11) (exempting employers with fewer than eight employees); RCW 49.60.040(10) (exempting employers of family members and domestic workers by excluding them from definition of *employee*); RCW 49.60.180(1) (BFOQ).[26]

The small-employer exemption alone excludes millions of employers and employees.[27] Additional employers, and additional positions, are exempt under discretionary exemptions above.[28] All these exempt employers can discriminate on any ground with relative impunity.

Thus, "Title VII is not a generally applicable statute due to the existence of individualized exemptions[.]" *Bear Creek*, 571 F.Supp.3d at 613. The notion that Title VII must be uniformly enforced to "eradicate[e] all forms of discrimination is undercut by" those secular exemptions. *Id*. Title VII is not being "enforced evenhandedly and, therefore, [i]s not generally applicable." *Waln*, 54 F.4th at 1159. Its exemptions do more

---

[26] WV has proven that the Christian nature of DCSRs is a BFOQ, entitling it to dismissal on this ground as well. "One key exception to Title VII's prohibition on hiring on the basis of religion is applicable if 'a [BFOQ] reasonably necessary to the normal operation of that particular business' [exists]." *McCollum v. Cal. Dep't of Corr.*, 647 F.3d 870, 881 (9th Cir. 2011). Here, the DCSR's religious requirements "affect an employee's ability to do the job," and "relate to the essence or to the central mission of [its] business." *EEOC v. Kamehameha Schools*, 990 F.2d 458, 465-66 (9th Cir. 1993).

[27] *See* CRS Rept. 40860 (1/15/2022) https://crsreports.congress.gov/product/pdf/R/R40860 (Small Business Size Standards).

[28] Formalized exemptions, such as Title VII's, present an easy case under *Fulton*. *FCA*, 46 F.4th at 1096. They also present the worst case, *id.* (rejecting "cramped and distorted reading of *Fulton*"), since officials have discretion over decisive facts—e.g., sufficiency of Communist affiliation, Indian heritage, or BFOQ.

harm to its anti-discrimination goals than a religious exemption does. They provide not "evenhanded, across-the-board" treatment, *Kennedy*, 142 S.Ct. at 2423, but vast potential for treating "*any* comparable secular activity more favorably than religious exercise." *Tandon*, 141 S.Ct. at 1296. Such policies conflict with *Tandon*'s holding "that religious groups should be treated the same as comparable secular groups." *FCA*, 46 F.4th at 1096 n.8 (9th Cir.). There can be "no compelling reason [to] deny[] an exception to [WV] while making them available to others." *Fulton,* 141 S.Ct. at 1882. "[L]aws which are 'underinclusive' as written or applied cannot be upheld." *FCA*, 46 F.4th at 1098. A lawsuit like this one "cannot—and does not—advance its interest in nondiscrimination by discriminating." *Id*. at 1099.

In any event, the denial of an exemption clearly is not the "least restrictive means of achieving some compelling state interest." *Thomas v. Review Bd*., 450 U.S. 707, 718 (1981). Under this "most demanding test known to constitutional law," *City of Boerne v. Flores*, 521 U.S. 507, 534 (1997), "only those interests of the highest order [can] overbalance legitimate claims to the free exercise of religion.'" *Thomas*, 450 U.S. at 718 (quoting *Yoder*, 406 U.S. at 215). Such interests cannot be "broadly formulated," *Ramirez*, 142 S.Ct. at 1278 (quoting *Burwell v. Hobby Lobby Stores*, 573 U.S. 682, 726-27 (2014)), but instead must be "properly narrowed," *Fulton*, 141 S.Ct. at 1881-82, and "compelling in context." *Cutter v. Wilkinson*, 544 U.S. 709, 723 (2005); *accord Gonzales v. O Centro Espirita*, 546 U.S. 418, 431 (2006). "Rather than rely on broadly formulated interests, courts must scrutinize the asserted harm of granting specific exemptions to particular religious claimants." *Fulton*, 141 S.Ct. at 1881 (citations and internal

DEF. WORLD VISION'S MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:21-CV-00920-JLR

Page 31

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

punctuation omitted). As for the least restrictive means, "so long as the government can achieve its interests in a manner that does not burden religion, it must do so." *Id.*

This test cannot be met here. Denying exemption to WV would do the opposite of what the First Amendment requires: to "preserv[e] the promise of the free exercise of religion," *Bostock*, 140 S.Ct. at 1754, by providing "proper protection" to WV as it seeks to live-out its belief "that, by divine precepts, same-sex marriage should not be condoned," *Obergefell v. Hodges*, 576 U.S. 644, 679 (2015). The interest of "highest order" here is protecting "deep and sincere religious beliefs" opposed "to gay marriage." *Masterpiece Cakeshop*, 138 S.Ct. at 1727, which Congress says are "due proper respect." Respect for Marriage Act, Pub. L. 117-228, §2(2) (Dec. 13, 2022).

**b. Both Claims Violate Expressive Association Protections.**

The expressive association inquiry is controlled by *Kennedy*, *Dale*, *Hurley v. Irish-American Gay*, 515 U.S. 557 (1995), and *Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984). This freedom prohibits "intrusion into the internal structure or affairs of an association," *id.* at 623, and "plainly presupposes a freedom not to associate." *Id.* In both situations, courts "give deference to an association's assertions regarding the nature of its expression [and] must also give deference to an association's view of what would impair its expression." *Dale*, 530 U.S. at 653. "[This rule] applies with special force [to] religious groups, whose very existence is dedicated to the collective expression and propagation of shared religious ideals." *Hosanna*, 565 U.S. at 200 (Alito/Kagan). Indeed, "the First Amendment necessarily protects the right of those who join together to advance shared beliefs, goals, and ideas, which, if pursued individually, would be

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

protected by the *First Amendment.*" *Sullivan v. Univ. of Wash.*, 60 F.4th 574, 579 (9th Cir. 2023). The Free Exercise Clause "work[s] in tandem" with the Free Speech Clause, "doubly protect[ing]" "expressive religious activities." *Kennedy*, 142 S.Ct. at 2421; *Green*, 52 F.4th at 787 n.14.[29]

World Vision is "a community of Christians" that exists to "preach the Gospel [of] Jesus Christ [and] spread [] the Christian religion." *Spencer*, 633 F.3d at 736, 741 & n.23. It therefore requires "biblically-sound" behavior, including expressing "sexuality solely within a faithful marriage between a man and a woman" to "honor the Biblical model [of] marriage." Thus, it "takes an official position with respect to homosexual conduct, and that is sufficient for First Amendment purposes." *Dale*, 530 U.S. at 655. This is how it defines itself, the "nature of its expression," and "what would impair it[.]" *Id*. at 653. It may exclude from its workforce those who openly defy it.

Denying WV this right fails all judicial tests. First, it fails each element of the strict scrutiny of *Roberts*, which requires (a) "compelling state interests" (b) "unrelated to the suppression of ideas" (c) "that cannot be achieved through means significantly less restrictive of associational freedoms." 468 U.S. at 623. Here, the application of antidiscrimination law to WV, far from being "unrelated to the suppression of ideas," suppresses certain ideas about sexual conduct and SSM. That failure alone is fatal. It also fails the other two elements for the reasons it failed them in the free exercise

---

[29] *See also Paul*, 819 F.2d at 883 (9th Cir.) ("The members of [plaintiff's church] no longer want to associate with her. We hold that they are free to make that choice."); *Spencer*, 570 F.Supp.2d at 1289 (its "membership is comprised of coreligionists"); 633 F.3d at 730 (analogizing "employees" to "members").

inquiry above. *See supra* at 29-33.

Second, it fails the more tailored scrutiny of *Dale*, because the "forced inclusion" of a person in Plaintiff's position would "significantly burden" World Vision's "right to oppose or disfavor homosexual conduct," a "severe intrusion" on its "freedom of expressive association." *Dale*, 530 U.S. at 656-59 (applying *Hurley*); *accord Green*, 52 F.4th at 779-92 (9th Cir.) (citing *Hurley* 28 times); *id*. at 806-08 (concurrence, citing *Hurley* seven times) ("Speech and association claims often run together."). In sum, the "right to expressive association allows [WV] to determine that its message will be effectively conveyed only by employees who sincerely share its views." *Slattery v. Hochul*, 61 F.4th 278, 288 (2d Cir. 2023).

**E. Plaintiff's State Claim Also Is Barred by the State ROE.**

WLAD provides an ROE. RCW 49.60.040(11) ("'Employer' … does not include any religious or sectarian organization not organized for private profit."). Washington's highest court has construed this state ROE to apply to positions that qualify for the ministerial exception. *See Woods v. SUGM*, 197 Wash.2d 231, 246-52 (2021). Since the DCSR position that Plaintiff sought qualifies for this exception, it qualifies for WLAD's ROE.

In any case, Plaintiff's state claim must bow to the U.S. Constitution. The unconstitutional adjudication of her discrimination claims "present compelling circumstances of irreparable harm." *Doe v. Trump*, 288 F.Supp.3d 1045, 1054 (W.D.Wash. 2017) (Robart, J.). "The ministerial exception bars all her claims, federal and state." *Starkey*, 41 F.4th at 945. The same is true for every WV defense "based in

DEF. WORLD VISION'S MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:21-CV-00920-JLR

Page 34

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

the First Amendment," *Werft*, 377 F.3d at 1100 n.1. "Because I hold that the First Amendment requires summary judgment … (for two separate reasons), I do not reach the statutory question." *Butler*, 609 F.Supp.3d at 190. As the First Amendment bars "not only unconstitutional laws, but [also] unnecessary *litigation* that chills" constitutional rights, it is "important" to resolve "First Amendment cases at the earliest possible junction." *Green*, 52 F.4th at 800. This Court should "bypass[]" all secondary issues to "resolve the claim immediately on First Amendment grounds." *Id*. at 796.

The state claim must be decided. "[D]iversity-of-citizenship jurisdiction—not just supplemental jurisdiction," *Clark v. Matthews Int'l Corp.*, 639 F.3d 391, 396 (8th Cir. 2011), mandates its retention. Where "diversity" presents "an independent jurisdictional basis for the state law claims," a district court has a "'virtually unflagging obligation' to exercise [that] jurisdiction." *Williams v. Costco*, 471 F.3d 975, 977 (9th Cir. 2006) (citation omitted). There is "no discretion to remand [the] case after elimination of the federal claim … if diversity of citizenship then exists." *Holden v. Haynes, 2014 WL 2094344, at *2* (E.D. Wash. 2014) (citing Costco).

Even if this "independent basis of federal jurisdiction," *Maguire*, 814 F.2d at 1218, did not require a decision on the state claim now, it would require one later upon removal. But it would be "uneconomical, inconvenient, and unnecessary to remand the state law claims to [state] courts," *Melton v. Alaska Career Coll.*, 738 F.App'x 895, 897 (9th Cir. 2018); *Martin v. Church*, 2022 WL 3348382, at *8 (W.D.N.Y. 2022) (dismissing Title VII claim on constitutional grounds but retaining state claims in "the interests of judicial economy, convenience, and fairness") (citing *Werft*). This Court should follow

DEF. WORLD VISION'S MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:21-CV-00920-JLR

Page 35

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052

the "well-trodden path" of "reaching and deciding a dispositive First Amendment issue that will avoid forcing the parties through unnecessary and protracted litigation." *Green*, 52 F.4th at 800 (9th Cir); *see also Doe*, 288 F.Supp.3d at 1054.

**VI. CONCLUSION.**

Dismissal is required on jurisdictional grounds. Dismissal also is warranted since "no additional facts [could] save [Plaintiff's] challenge to [World Vision's] differential treatment of same-sex marriages as compared to opposite-sex marriages, since [its] actions fell squarely within [the] religious exemption." *Maxon*, 2021 WL 5882035 at *3. Dismissal also is required on First Amendment grounds, which support an efficient resolution of all claims. This lawsuit would punish World Vision for engaging in "religious observance doubly protected by the Free Exercise and Free Speech Clauses." *Kennedy*, 142 S.Ct. at 2432-33. "The Constitution neither mandates nor tolerates that kind of discrimination." *Id*. "Respect for religious expression is indispensable to life in a free and diverse Republic[.]" *Id*.

This case should be dismissed with prejudice.

Respectfully submitted,

DATED this April 11, 2023

ELLIS, LI & McKINSTRY PLLC

By:  *s/ Nathaniel L. Taylor*

Nathaniel L. Taylor, WSBA No. 27174
Abigail J. St. Hilaire, WSBA No. 48194
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
Telephone: (206) 682-0565
Fax: (206) 625-1052

Email: ntaylor@elmlaw.com
Email: asthilaire@elmlaw.com

GAMMON & GRANGE, P.C.
Scott J. Ward, VSB #37758
   (admitted pro hac vice)
J. Matthew Szymanski, VSB # 33150
   (admitted pro hac vice)
1945 Old Gallows Road, # 650
Tysons, Virginia 22182
Telephone: (703) 761-5012
Email: SJW@gg-law.com
Email: JMS@gg-law.com

*Attorneys for Defendant*
*World Vision, Inc.*

I certify that this memorandum contains 10,499 words, in compliance with the 10,500-word limit in the Court's Order on Over-Length Briefs filed 4/5/2023 (Dkt. 21).

DEF. WORLD VISION'S MOTION
FOR SUMMARY JUDGMENT
CASE NO. 2:21-CV-00920-JLR

Page 37

Ellis | Li | McKinstry
1700 Seventh Avenue, Suite 1810
Seattle, WA 98101-1820
206.682.0565  Fax: 206.625.1052