**Hon. James L. Robart**

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

AUBRY MCMAHON,

        Plaintiff,

    v.

WORLD VISION, INC.,

        Defendant.

Case No.:  2:21-cv-00920-JLR

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**NOTE DATE: MAY 5, 2023**

## I.  OVERVIEW

On April 14, 2023, the parties cross-moved for summary judgment on the issue of liability. Dkt. Nos. 24-29. Plaintiff Aubry McMahon ("Plaintiff") principally contended that Defendant World Vision, Inc. ("Defendant" or "World Vision") rescinded its job offer to her for the position of customer service representative because it learned she was in a same-sex marriage. Defendant took this action in furtherance of a hiring policy that facially discriminates against individuals with respect to sex, sexual orientation, and marital status as the policy effectively prohibits the employment of any individual who is in a same-sex marriage. Dkt. No. 24. In its motion for summary judgment, Defendant acknowledges that it would not have rescinded its employment offer to Plaintiff if she had been a man married to a woman. Nevertheless, World

NISAR LAW GROUP, P.C.
60 East 42nd Street, Ste. 4600
New York, NY 10165
Ph: (646) 889-1007

Vision makes a host of arguments principally centered on its view that it is immune from this lawsuit under Title VII's statutory exemption for religious employers, its assertion that its employment decision was grounded in Plaintiff's conduct as opposed to her protected status, and its claim that the job of customer service representative is subject to the First Amendment ministerial exception.

For the reasons discussed below, and as outlined in Plaintiff's Motion for Summary Judgment materials filed at Dkt. Nos. 24-25, Defendant's motion should be denied and judgment on the issue of liability entered in Plaintiff's favor.

## II.  ARGUMENT

In her summary judgment motion, Plaintiff submitted direct evidence via Talbot's deposition testimony that Defendant rescinded its job offer to her because it learned she was in a same-sex marriage. Defendant's summary judgment motion materials are unavailing that its actions do not amount to unlawful conduct prohibited by Title VII of the Civil Rights Act of 1964 ("Title VII") and the Washington Law Against Discrimination ("WLAD"), Rev. Code Wash. ("RCW") § 49.60.

**A.    The Title VII Religious Employer Exemption Applies only to Claims of Religious Discrimination and Plaintiff Has Not Brought Claims for Religious Discrimination.**

Defendant asserts that it is a religious organization as defined under Title VII and WLAD, and, by virtue thereof, is exempt from liability as a religious organization employer (or "ROE," as Defendant refers to it shorthand throughout its motion, Dkt. No. 26). With respect to the Title VII exemption, Defendant relies on *Spencer v. World Vision, Inc.*, 570 F.Supp.2d 1279 (W.D. Wash. 2008), *aff'd as amended on denial of reh'g en banc*, 633 F.3d 723 (9th Cir. 2011), and *Garcia v. Salvation Army*, 918 F.3d 997 (9th Cir. 2019).

PLAINTIFF'S S.J. OPPOSITION - Page 2
2:21-CV-00920-JLR

Plaintiff does not dispute that World Vision is a religious organization. However, Defendant's reliance on those exemptions to defend itself from the claims at issue in this case is misplaced. The Title VII religious employer exemption gives immunity only from *religious* discrimination claims. Plaintiff has not brought claims for religious discrimination. Although the WLAD religious employer exemption is not limited to religious discrimination claims, it applies only to discrimination claims brought by employees who fall under the First Amendment ministerial exception. *See Woods v. Seattle's Union Gospel Mission*, 197 Wn.2d 231, 250, 481 P.3d 1060 (2021). As set forth in Plaintiff's Motion for Summary Judgment and below, Plaintiff's job as a customer service representative does not qualify for the ministerial exception.

Under Title VII, it is "unlawful ... for an employer ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual ..., because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); *see Defrancesco v. Arizona Bd. of Regents*, No. 21-16530, 2023 U.S. App. LEXIS 1270, at *3 (9th Cir. Jan. 19, 2023). That prohibition, however, does not apply to "a religious corporation, association, educational institution, or society with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by such [entity] of its activities." 42 U.S.C. § 2000e-1(a).

The Ninth Circuit has squarely limited the federal religious employer exemption to bar claims of *religious* discrimination, holding that while religious institutions may base relevant employment decisions upon religious preferences, "[they] are not immune from liability... for discrimination" on other grounds protected by Title VII. *E.E.O.C. v. Fremont Christian Sch.*, 781 F.2d 1362, 1366 (9th Cir. 1986). "[A]lthough Congress permitted religious organizations to discriminate in favor of members of their faith, religious employers are not immune from liability

PLAINTIFF'S S.J. OPPOSITION - Page 3
2:21-CV-00920-JLR

NISAR LAW GROUP, P.C.
60 East 42nd Street, Ste. 4600
New York, NY 10165
Ph: (646) 889-1007

for discrimination based on … sex …." *EEOC v. Pacific Press Pub. Ass'n.*, 676 F.2d 1272, 1276 (9th Cir. 1982). "The legislative history shows that Congress consistently rejected proposals to allow religious employers to discriminate on grounds other than religion: '(church-affiliated) organizations remain subject to the provisions of Title VII with regard to race, color, sex or national origin.'" *Id.* (quoting Section by Section Analysis of H.R. 1746, The Equal Employment Opportunity Act of 1972, 1972 Legis. Hist. 1845; 118 Cong. Rec. 7167).

Defendant asks this Court to ignore this binding Ninth Circuit precedent and instead follow Judge Easterbrook's concurring opinion in *Starkey v. Roman Catholic Archdiocese*, 41 F.4th 931, 946 (7th Cir. 2022), which asserted that the exemption should apply to discrimination claims of all types. As Judge Easterbrook candidly admitted, all the "courts of appeals say that the exemption permits religious discrimination but no other kind." *Id.* (collecting appellate cases contrary to his view of the religious employer exemption including *EEOC v. Townley Eng. & Mfg. Co.*, 859 F.2d 610, 616 (9th Cir. 1982)). Judge Easterbrook's belief that the religious employer exemption bars discrimination claims other than religious discrimination claims is not the law in the Ninth Circuit or in any other circuit.

Implicitly recognizing that binding Ninth Circuit precedent limits the Title VII religious employer exemption to claims of religious discrimination, Defendant vainly attempts to recast Plaintiff's claims as ones alleging religious discrimination. Defendant's wishful proposal cannot change the fact that Plaintiff has brought claims under Title VII and WLAD alleging only discrimination due to her sex (female), sexual orientation (gay) (under both Title VII and WLAD), and marital status (married to a person of the same sex) (under WLAD only). Dkt. No. 1. Because none of these claims allege religious discrimination, Defendant cannot avail itself of the Title VII religious organization exemption.

PLAINTIFF'S S.J. OPPOSITION - Page 4
2:21-CV-00920-JLR

NISAR LAW GROUP, P.C.
60 East 42nd Street, Ste. 4600
New York, NY 10165
Ph: (646) 889-1007

To the extent that Defendant is averring that the job offer extended to Plaintiff was rescinded on account of her purported *disagreement* with World Vision's sincerely held religious and Christian theological beliefs surrounding the biblical understanding of Christian love and marriage, this argument does not bring Plaintiff's claims within the purview of the Title VII religious employer exemption. Other religious organizations have made the same argument, and courts within the Ninth Circuit have uniformly rejected it. *See, e.g., EEOC v. Fremont Christian School*, 781 F.2d 1362, 1367 (9th Cir. 1986) (religious school which paid men health benefits but denied such benefits to similarly situated women because of sincerely held religious belief that men are the "heads of the household" violated Title VII); *Vigars v. Valley Christian Ctr.*, 805 F. Supp. 802, 808 (N.D. Cal. 1992) ("The fact that defendants' dislike of pregnancy outside of marriage stems from a religious belief may be relevant to the Court's First Amendment analysis, but it does not automatically exempt the termination decision from Title VII scrutiny [on pregnancy discrimination grounds]").

Defendant expends a considerable portion of its motion for summary judgment explaining the different views shared by Plaintiff and World Vision on a host of topics involving the Christian faith. Defendant characterizes this as a theological dispute involving "a different understanding of what the unconditional love of Jesus means" and a "very different understanding of what the Bible says." Defendant also avers that Plaintiff views World Vision's marriage policy as one which "misinterprets the Bible that being gay is a sin" and as such, this Court should not enter this "religious thicket." Dkt. 26 at p. 12. However, absolutely none of these purported theological disagreements were known by Defendant (even assuming Defendant is construing her testimony accurately) until Plaintiff's deposition—which was conducted on February 24, 2023—more than two years after her job offer was rescinded. This further

NISAR LAW GROUP, P.C.
60 East 42nd Street, Ste. 4600
New York, NY 10165
Ph: (646) 889-1007

demonstrates that Defendant's attempt at framing this sex, sexual orientation, and marital status discrimination case as a theological dispute is a red herring.

Lastly, Defendant relies on the Title IX case of *Maxon v. Fuller Theol. Seminary*, No. 20-56156, 2021 U.S. App. LEXIS 36673 (9th Cir. Dec. 13, 2021), and asserts it is analogous to the instant Title VII case. Dkt. No. 26 at pp. 18-19. Defendant is misguided. *Maxon* held, in essence, that if a religious employer is exempt from Title IX claims, then it is exempt from sex discrimination claims. That is a truism because Title IX prohibits only discrimination on the basis of sex. However, the same cannot be said for Title VII. Although Congress permitted religious organizations to discriminate in favor of members of their faith, that does not extend to discrimination based on sex. *See, e.g., Pacific Press Pub. Ass'n.*, 676 F.2d 1272. In sum, binding Ninth Circuit law precludes Defendant's Title VII religious employer defense.

**B.      Defendant Rescinded Plaintiff's Job Offer Based on an Employment Policy that Facially Discriminates on the Basis of Protected Status, Not Sexual Conduct.**

In Section V of its motion, Defendant seeks to reframe its decision to revoke Plaintiff's job offer as being based on her sexual conduct as opposed to her protected traits of sex (female), sexual orientation (gay), and marital status (being in a same-sex marriage). Defendant alleges that "[n]either sexual conduct outside of biblical marriage, nor the class of those who promote it, is protected by Title VII," Dkt. No. 26 at p. 13 (quotation and citation omitted), and further, "[World Vision] rescinded her offer because of her *sexual conduct outside biblical marriage* and such conduct (or its open promotion) required the same result regardless of gender (or [sexual] orientation)." Dkt. No. 26 at pp. 13-14 (citation omitted).

However, it is clear that the present case is one involving protected status discrimination as opposed to conduct. If Defendant had an "abstinent employees only" policy, then that would

NISAR LAW GROUP, P.C.
60 East 42nd Street, Ste. 4600
New York, NY 10165
Ph: (646) 889-1007

not likely violate either Title VII or the WLAD. But Defendant doesn't have a policy that forbids hiring anyone who engages in sexual conduct. Defendant has a policy that forbids hiring anyone who engages in sexual conduct outside of a heterosexual marriage. Whether an employee violates that policy by engaging in sexual conduct depends entirely on the employee's sex, sexual orientation, and marital status. As shown in Plaintiff's Motion for Summary Judgment, Defendant's employment policy facially discriminates on the basis of sex, sexual orientation, and marital status under well-established federal and state law.

The case of *Busey v. Richland Sch. Dist.*, 172 F. Supp. 3d 1167 (E.D. Wash. 2016), which is cited in Plaintiff's Motion for Summary Judgment, Dkt. No. 24, is instructive. In *Busey*, the plaintiff contended his employer discharged him from employment on account of his marriage status in violation of WLAD. Busey was employed by a school district as a superintendent and was engaged in an extramarital affair with a para-educator within the district. Their relationship became public, and following an investigation confirming its existence, Busey's employment was terminated, in pertinent part, on the grounds that he engaged in a "long-standing extramarital affair" and engaged in inappropriate and unprofessional conduct with a female professional "while . . . married." *Busey*, 172 F. Supp. 3d at 1172-73.

In *Busey*, the court stated that the threshold issue was "whether there is a relevant distinction here between [ ] Busey's marital status and his conduct of engaging in an extramarital affair." *Id.* at 1180. In concluding that the answer was no, the court stated that "[w]hile an adverse employment action for conduct made without regard to an individual's marital status would provide no basis for a marital discrimination claim, … this cannot be the case when the status and conduct are so directly linked." *Id.* at 1180-81 (citing *Veenstra v. Washtenaw Country Club*, 466 Mich. 155, 165, 645 N.W.2d 643 (2002) ("Adverse action against an individual for conduct,

PLAINTIFF'S S.J. OPPOSITION - Page 7
2:21-CV-00920-JLR

without regard to a protected status, provides no basis for recourse under the [Michigan] Civil Rights Act.") (edit omitted)).

*Busey* applies with equal force here. It is not possible to separate Plaintiff's conduct from her statuses of being female and in a same-sex marriage.[1] It is undisputed that Defendant revoked its job offer to Plaintiff because of a hiring policy that facially discriminates with respect to sex and sexual orientation by prohibiting the employment of any individual in a same-sex marriage. Further to this point, World Vision's defining "marriage" as a union which can only be recognized as being between a man and a woman facially discriminated against Plaintiff, who was a woman married to a woman. Had Plaintiff been a man who was married to a woman, she would not have run afoul of World Vision's hiring policy. As such, but for her status of being in a same-sex marriage, she would not have suffered an adverse employment action.

## C. Defendant Fails to Meet Its Burden of Proving the Customer Service Representative Job at Issue Fell within the Ministerial Exception.

Defendant further asserts that Plaintiff's claims are barred by the ministerial exception. Dkt. No. 26 at pp. 23-28. The Ninth Circuit has stated that the "ministerial exception" exempts a religious organization's employment relationship with its "ministers" from the application of some employment statutes, even though the statutes by their literal terms would otherwise apply. *See, e.g., Alcazar v. Corp. of the Catholic Archbishop of Seattle*, 627 F.3d 1288, 1290 (9th Cir. 2010). The key inquiry, therefore, is whether the particular employee is a "minister" for purposes of the exception. In her motion for summary judgment, Plaintiff set forth the law governing the ministerial exemption including that Defendant has the burden of proof that it applies.

---

[1] It should be noted that nowhere in the record is there any proof that Plaintiff was engaged in sexual conduct with anyone (whether it be with her wife or anybody else for that matter). This further shows that Defendant rescinded its job offer to Plaintiff because it learned she was in a same-sex marriage and not due to her sexual conduct.

PLAINTIFF'S S.J. OPPOSITION - Page 8
2:21-CV-00920-JLR

NISAR LAW GROUP, P.C.
60 East 42nd Street, Ste. 4600
New York, NY 10165
Ph: (646) 889-1007

Defendant begins its ministerial exception argument by asserting that all of its employees are ministers because "all staff are responsible for 'important religious functions.'" Dkt. No. 24 at pp. 23, 25 (quoting *Hosanna-Tabor Evangelical Lutheran Church v. EEOC*, 565 U.S. 171, 192 (2012)). Defendant claims that all employees are ministers because they must (1) confess they are committed Christians (2) agree "wholeheartedly" with Word Vision's Christian principles, (3) communicate World Vision's Christian faith to others, and (4) participate regularly in prayer activities, daily devotionals, and weekly chapel services. *Id.* at 25. Defendant's argument, however, proves too much.

The ministerial exception is based on the principle that the antidiscrimination laws cannot constitutionally intrude on a religious organization's "selection of the individuals who play *certain key* roles" within the organization. *Our Lady of Guadalupe School v. Morrissey-Berru*, 140 S. Ct. 2049, 2060 (2020) (emphasis supplied). "[C]ourts are bound to stay out of employment disputes involving those holding *certain important positions* within churches or other religious institutions." *Id.* (emphasis supplied). "Ministers" have "a role distinct from that of most of [the religious organization's] members." *Hosanna-Tabor*, 565 U.S. at 191. As Defendant recognizes and asserts, the religious aspects of the customer service position representative for which Plaintiff was accepted are equally applicable to every employment position with World Vision. If all employees have the same religious role within a religious organization, then none of them "play certain key roles," hold "certain important positions," or perform "a role distinct from that of most of its members," and the ministerial exception does not apply to any of those employees.

Defendant relies on four considerations in arguing that the job of customer service representative—the job for which Plaintiff applied and was hired—qualifies for the ministerial exception: the contents of the job posting itself, participation in chapel, leadership of devotions,

PLAINTIFF'S S.J. OPPOSITION - Page 9
2:21-CV-00920-JLR

NISAR LAW GROUP, P.C.
60 East 42nd Street, Ste. 4600
New York, NY 10165
Ph: (646) 889-1007

and praying with donors or potential donors. When assessed in the aggregate and in light of the other relevant factors (which are discussed in Plaintiff's summary judgment motion), there can be but one conclusion: Defendant has failed to prove Plaintiff was a "minister" for purposes of the exception. The four considerations will be addressed in turn.

### 1.      The Contents of the Job Posting Itself

In arguing that the job posting itself confers ministerial duties upon an individual hired into the position of a customer service representative, Defendant claims to rely on the job description itself. However, it warrants pointing out that in support of this argument, Defendant cites to, and relies upon, a job description that wasn't the job description for the job for which Plaintiff applied. Specifically, Defendant relies upon the job description for a job posting which includes the document Bates-stamped WV184. Dkt. No. 26 at p. 6. Defendant purports to quote from the applicable job description and avers that it mandates that Plaintiff "would be a 'crucial member' of [donor customer services] and a 'key liaison' and 'voice of World Vision' to [their] donors and the general public.'" However, this job description for a "call center customer service representative" was posted on March 7, 2022, Exhibit ("Exh."[2]) 1 to Declaration of Casimir Wolnowski (dated May 1, 2023) at WV000186. March 7, 2022, was more than a year after the date Plaintiff's job offer was rescinded, and notably, nearly eight months after the date the present lawsuit was filed.[3]

The reason this is important to point out is that courts have found it relevant whether the applicable job description indicates that a position undertakes "vital religious duties," those "vital

---

[2] All exhibits cited herein (i.e., as "Exh. __") are references to exhibits attached to the Declaration of Casimir Wolnowski dated May 1, 2023.

[3] This case was commenced July 9, 2021. Dkt. No. 1.

PLAINTIFF'S S.J. OPPOSITION - Page 10
2:21-CV-00920-JLR

NISAR LAW GROUP, P.C.
60 East 42nd Street, Ste. 4600
New York, NY 10165
Ph: (646) 889-1007

[ ] in carrying out the mission of the church," or whose role is important "in the life of the religion." *Our Lady of Guadalupe*, 140 S. Ct. at 2064, 2066; *Jusino v. Fed'n of Cath. Teachers, Inc.*, 54 F.4th 95, 104 n.2 (2d Cir. 2022). Significantly, the terms "crucial member," "key liaison," and "voice of World Vision" are terms which do not appear in the posting for the job to which Plaintiff applied. Exh. 2. In footnote 5 on page 6 of Defendant's motion for summary judgment, Defendant avers that this "2022 Job Posting contains clarifying but insubstantial differences." Dkt. No. 26 at p. 6. Plaintiff strongly disagrees. The after-the-fact changes to the customer service job description are highly significant. Indeed, they seem to have been added after this lawsuit was filed precisely to bolster Defendant's claim that the ministerial exception applies to the position of customer service representative. But much of the language of the job description upon which Defendant relies did not exist when Plaintiff was removed from the customer service representative position. That alone undermines Defendant's argument.

As for the duties that were listed in the job description for the job to which Plaintiff applied, there in nothing that indicates that a customer service representative undertakes "vital religious duties," those "vital [ ] in carrying out the mission of the church," or whose role is important "in the life of the religion." See Dkt. No. 24 at p. 14; *Cf. Our Lady of Guadalupe*, 140 S. Ct. at 2064, 2066. As the actual job description makes clear, the main duties of the customer service position relate to furthering Defendant's charitable activities and are entirely secular.

Indeed, the customer service job description merely *touches* upon religion, and only vaguely. As noted in Plaintiff's Motion for Summary Judgment, there are three at most:

> Help carry out our Christian organization's mission, vision, and strategies. Personify the ministry of World Vision by witnessing to Christ and ministering to others through life, deed, word and sign;

> Keep Christ central in our individual and corporate lives. Attend and participate in

PLAINTIFF'S S.J. OPPOSITION - Page 11
2:21-CV-00920-JLR

NISAR LAW GROUP, P.C.
60 East 42nd Street, Ste. 4600
New York, NY 10165
Ph: (646) 889-1007

1    the leadership of devotions, weekly Chapel services, and regular prayer; and,

2    Be sensitive to Donor's needs and pray with them when appropriate.

3    Critically, as discussed in Plaintiff's Motion for Summary Judgment, Defendant does not hold

4    customer service representatives out as ministers. Further, there is no requirement for a customer

5    service representative to have had *any* religious training (formal or otherwise), and the only

6    educational requirements to hold the position are a high school diploma or GED equivalent.

7    Defendant's assertion that "[t]itle means little," Dkt. No. 26 at p. 24, is contrary to Supreme

8    Court law. The employee's job title is the first "relevant circumstance" as to whether the

9    ministerial exception applies. *Our Lady of Guadalupe*, 140 S. Ct. at 2062. "Simply giving an

10   employee the title of 'minister' is not enough to justify the exception. And by the same token,

11   since many religious traditions do not use the title 'minister,' it cannot be a necessary

12   requirement." *Id.* at 2063-64. However, an employee's job title can show whether "the recipient

13   has been given an important position of trust" and "evidence the importance attached to her role."

14   *Id.* at 2063. Here, the relevant job title was "customer service representative." Different religious

15   traditions use many different titles to describe those into whose hands "the members of a religious

16   group put their faith," *Hosanna-Tabor*, 565 U.S. at 188, but "customer service representative" is

17   not among them.

18   This Court should give little weight to Defendant's attempts to reframe the duties of a

19   customer service representative as ones of vital religious importance. Defendant's

20   recharacterization of the position of customer service representative as having a function akin to

21   that of a minister of a church or someone who is tasked with teaching the faith is not supported

22   by the evidence. In any event, the religious responsibilities of a customer service representative

23   were no different from those of every other employee of World Vision.

24   PLAINTIFF'S S.J. OPPOSITION - Page 12
     2:21-CV-00920-JLR

1

### 2.      Participation in Chapel Services

2

Defendant also relies upon, among other things, the contents of Plaintiff's "employment

3

documents" (including any handbooks, Dkt. No. 26 at p. 24) in attempting to demonstrate that

4

Plaintiff would have performed vital religious duties as a customer service representative.

5

Participation in chapel services is one of the functions which Defendant alleges qualifies a

6

customer service representative as a minister. However, participation in chapel services is a

7

function every World Vision staff member must undertake.

8

To this point, in the declaration submitted by Melanie Freiberg ("Freiberg"), she states

9

that a guidebook (which is referred to as the "Orange Book") is made available to all employees

10

of World Vision upon hire and its purpose is to help employees "better understand, comply with,

11

and carry out World Vision's mission, vision, and core values." Dkt. No. 28, at ¶53. Under the

12

heading which reads "Weekly Chapel," the Orange Book states, in relevant part: "World Vision

13

staff are invited and expected to worship every week (usually Wednesday) in an organization-

14

wide chapel in Federal Way[, Washington] (or in the Washington, D.C. office)." Dkt. No. 28,

15

Exh. 29, at WV000718. This shows that all World Vision employees are expected to participate

16

in chapel, as Defendant admits in its motion. Dkt No. 26 at 25. Therefore, the fact that customers

17

service representatives are expected to participate in chapel does not differentiate them from any

18

other World Vision employee and does not make customer service representatives "ministers"

19

within the context of the organization.

20

Moreover, Freiberg made clear at her deposition that while there is an expectation for

21

World Vision staff members to *attend* chapel, "leading chapel is not [a job requirement]" and

22

that *leading* chapel for a customer service representative depends on "interest and desire to lead."

23

Dkt. No. 25, Exh. 13, at 22:11-23. It is also worth mentioning that around the time Plaintiff would

24

PLAINTIFF'S S.J. OPPOSITION - Page 13
2:21-CV-00920-JLR

have begun working for Defendant (*i.e.*, early February 2021), weekly chapel was conducted virtually and there was only one weekly chapel service for all World Vision employees to attend. Dkt. No. 25, Exh. 11, at 123:16-124:10. In other words, literally thousands of employees logged into an online virtual platform to "attend" chapel one day a week (usually on Wednesdays). As for those customer service representatives who joined, there was absolutely no expectation for them to lead chapel. In sum, nothing about World Vision's expectations with respect to customer service representatives' participation in chapel brings them within the ministerial exception.

### 3.      Leadership of Devotions

With respect to Defendant's claim that customer service representatives had to "attend and participate in the leadership of devotions," to the extent these were actual job requirements they were equally required of every other World Vision employee. Dkt. No. 25, Exh. 11, at 124:24-125:7; Dkt. No. 25, Exh. 13, at 22:11-19; Dkt. No. 26 at p. 25. A document entitled "WVUS Devotion Guidelines" is disseminated to <u>all</u> World Vision staff members, Dkt. No. 28 at ¶ 55. It sets forth World Vision employees' responsibilities regarding "leading devotions." Contrary to what Defendant implies, "leadership of devotions" is "a part of *every* WVUS job description" and it is contemplated that leading devotions rotates among all staff members. Exh. 3 (emphasis added). These Guidelines also state that for staff members who are not comfortable leading devotions, it is suggested they "ask[ ] another staff member to co-lead with them."

Notably, the time spent by World Vision employees in devotion (whether leading or just being present) is merely 10 minutes a day, four times a week, with a maximum time allowable of 45 minutes per week. Exh.3. Accordingly, in any given week, assuming a World Vision staff member is leading the devotion for the entirety of the sessions (which would go against the idea of rotating leadership in any event), "leading devotions" would amount to less than two percent

PLAINTIFF'S S.J. OPPOSITION - Page 14
2:21-CV-00920-JLR

of a full-time employee's 40-hour work week (.75 ÷ 40 = .01875). Two percent is a very small percentage of employee time.

Moreover, Defendant has failed to establish that *leadership of* devotions is a job requirement for customer service representatives. When Freiberg was asked whether leading devotions was an obligatory function of a customer service representative, she responded unequivocally at her initial deposition—which was held on February 16, 2023—that the expectation is to "*participate* in devotions" rather than to lead, Dkt. No. 25, Exh. 13, at 22:5-16. She also testified that each team within World Vision determines whether the responsibilities of leading those devotions are shared among team members. Dkt. No. 25, Exh. 13, at 22:15-19. Further, when asked whether it would be a disqualifier for employment if an employee outright refused to lead as opposed to being merely a participant, Freiberg replied: "To lead a devotion … would not be a required expectation." Dkt. No. 25, Exh. 13, at 23:16-25:18.

However, at Freiberg's second deposition—which was conducted March 10, 2023—she contradicted her prior testimony that the leading of devotions was an encouraged task rather than a required one. She testified on March 10, 2023, that every customer service representative or trainee is "required to attend devotions and to ultimately lead devotions." Dkt. 25, Exh. 10, at 43:18-20. A party cannot create a triable issue of fact by contradicting its own prior sworn deposition testimony. *E.g.*, *Harris v. City of Seattle*, 315 F. Supp. 2d 1105, 1111 (W.D. Wash. 2004). Accordingly, this Court should disregard Freiberg's second deposition testimony that customer service representatives are required to lead devotions. Even if this Court were to credit that testimony, it would not be a basis for this Court to find the ministerial exception applicable to customer service representatives. As noted just above, "leadership of devotions" is "a part of *every* WVUS job description." Exh. 3.

PLAINTIFF'S S.J. OPPOSITION - Page 15
2:21-CV-00920-JLR

NISAR LAW GROUP, P.C.
60 East 42nd Street, Ste. 4600
New York, NY 10165
Ph: (646) 889-1007

Plaintiff emphasizes that *all* World Vision employees had the same job functions and expectations with respect to leading devotions and participating in weekly chapel because one of the factors the *Hosanna-Tabor* Court found significant in holding that the employee fell within the ministerial exception was that she had "a role distinct from that of most of [the organization's] members." 565 U.S. at 191. World Vision's own documents show that the role of customer service representatives in participating in chapel and leading devotions was no different from most of the organization's members. This cuts strongly against Defendant's position.

Additionally, even assuming leading devotions is a "religious duty" for all World Vision employees, the amount of time spent on secular versus religious duties is relevant to whether an employee falls within the ministerial exception. *Id.* at 194. *All* World Vision staff members (customer service representative or otherwise) are only permitted to spend a maximum of 45 minutes per week involved in devotions (whether it be leading one or merely being present at one). This shows that the ubiquitous expectation that World Vision employees be involved in devotions is only a small part of what World Vision employees do.

The same goes for chapel. The requirements and expectations for customer service representatives as they relate to attending chapel services are no different than for most World Vision employees. And with respect to leading chapel services, there is absolutely no expectation for customer service representatives to undertake that responsibility. Accordingly, the limited extent to which customer service representatives participate in chapel services and devotions does not make them ministers, any more than such participation makes every other World Vision employee a minister.

**4.      Praying With Donors or Potential Donors**

World Vision dedicates significant attention in its summary judgment motion to the

PLAINTIFF'S S.J. OPPOSITION - Page 16
2:21-CV-00920-JLR

NISAR LAW GROUP, P.C.
60 East 42nd Street, Ste. 4600
New York, NY 10165
Ph: (646) 889-1007

importance of prayer and the central role that prayer plays for all World Vision employees, customer service representatives included. World Vision contends that all staff members are generally tasked with regularly participating in "prayer activities," Dkt. No. 26 at p. 25, which seem to be generally intertwined for all staff in participating in daily devotionals and weekly chapel services (indeed, those are two activities in which prayer is incorporated). In fact, to begin each work year, an entire workday is set aside each year for prayer which *all* staff must attend. Dkt. No. 28, at ¶ 26.

The customer service representative job posting mandates that customer service representatives "[a]ttend and participate in … regular prayer" and "pray with [donors] when appropriate." Dkt. No. 25, Exh. 1, at WV000049. According to the job description, these are the only responsibilities which specifically involve the act of prayer. In its motion for summary judgment, World Vision incorrectly suggests that praying with donors is a job *requirement* for customer service representatives. Defendant states that part of the duties of customer service representatives "would include praying faithfully with donors" as "illustrated by … representative calls where [customer service representatives] prayed with donors about their needs and the needs of the children they sponsor." Dkt. No. 26 at p. 26. Notwithstanding the foregoing argument in Defendant's motion, Freiberg unambiguously testified that although praying with donors is *encouraged*, it is not a job requirement for the position of a customer service representative. Dkt. No. 25, Exh. 10, at 24:2-11.

This testimony is confirmed by a "guidance document," Dkt. No. 25, Exh. 10, at 26:20-25, bearing the heading "Showing Empathy on a Call During a Crisis (Talking Points)." This document was used to assist customer service representatives in communicating with donors. Under each heading there is a sentence which reads: "If comfortable, offer to pray with the donor

NISAR LAW GROUP, P.C.
60 East 42nd Street, Ste. 4600
New York, NY 10165
Ph: (646) 889-1007

over the phone." Dkt. No. 25, Exh. 14. Freiberg testified that this sentence is intended to inform the customer service representative that he or she has a choice to offer to pray rather than it being mandatory, and that "there is not … disciplinary action if [the customer service representatives] don't pray [with donors]." Dkt. No. 25, Exh. 10, at 30:14-23.

That praying with donors is *encouraged* rather than *required* is further substantiated by a document entitled "Giving Word to Our Faith" framework (abbreviated shorthand as "GWF Framework") that is disseminated to all customer service representatives. This document gives examples of how to effectively communicate its messaging, but explicitly states: "The examples provided [ ] are indicative only and based on insights about contextual audiences gathered during workshops. End users will need to articulate their own insights for their audiences and apply the framework accordingly." Dkt. No. 25, Exh. 7. Freiberg made clear that these two sentences communicate to employees that it is their choice whether to implement these ideas and "provides some discretion on how to utilize [the framework]." Dkt. No. 25, Exh. 10, at 40:15-21.

Defendant affirmatively argues that "the core element of *prayer*" is an important facet of employment at World Vision (especially insofar as it is incorporated into devotions and chapel attendance) regardless of the employee's position. Dkt. No. 26 at p. 25. However, the undisputed evidence demonstrates that leading donors or potential donors in prayer is not a job requirement for customer service representatives. And while the audio recordings referenced by Defendant (which were supplied to the Court, Dkt. No. 23) may indeed be instructive in how prayer can be an effective tool in connecting with donors, if a customer service representative declines to incorporate prayer into his or her approach with donors, no discipline will come of it.

In sum, none of the four factors upon which Defendant relies in support of its contention that the customer service representative position fell within the ministerial exception, either alone

PLAINTIFF'S S.J. OPPOSITION - Page 18
2:21-CV-00920-JLR

NISAR LAW GROUP, P.C.
60 East 42nd Street, Ste. 4600
New York, NY 10165
Ph: (646) 889-1007

or in the aggregate, satisfy its burden of proof. The religious aspects of the customer service position were no different from that of every other job at World Vision. That the position at issue here had a job title with no religious connotations, nor any suggestion of religious leadership, is further confirmation that the ministerial exception has no application to this case.

**D.     Defendant's Constitutional Challenges Lack any Legal Foundation.**

Beginning on page 26 of Defendant's Motion for Summary Judgment, World Vision seems to make arguments challenging the constitutionality of Title VII and WLAD as applied to Plaintiff's claims in this case. Defendant suggests that application by this Court of both Title VII and WLAD restricts Defendant's First Amendment freedoms of religion and "expressive association." Dkt. No. 26 at pp. 28-29, and as such, trigger a strict scrutiny inquiry. These contentions should be rejected.

The Free Exercise Clause of the First Amendment provides, "Congress shall make no law … prohibiting the free exercise [of religion]." U.S. Const. amend. I. "[L]aws incidentally burdening religion are ordinarily not subject to strict scrutiny under the Free Exercise [C]lause so long as they are neutral and generally applicable." *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1876 (2021) (citation omitted). If a challenged rule or policy is neutral and generally applicable, the Ninth Circuit instructs its district courts to employ rational basis review, which asks whether the government action at issue is "rationally related to a legitimate governmental purpose." *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1084 (9th Cir. 2015). Further, free exercise claims must fail "if prohibiting the exercise of religion ... is not the object of the law but merely the incidental effect of a generally applicable and otherwise valid provision... ." *American Friends Service Committee v. Thornburgh*, 951 F.2d 957 (9th Cir. 1991) (quotation, citation and edit omitted).

NISAR LAW GROUP, P.C.
60 East 42nd Street, Ste. 4600
New York, NY 10165
Ph: (646) 889-1007

"Title VII neither regulates religious beliefs, nor burdens religious acts, because of their religious motivation. On the contrary, it is clear that Title VII is a secular, neutral statute …" *Vigars v. Valley Christian Ctr.*, 805 F. Supp. 802, 809 (N.D. Cal. 1992). As such, rational basis review should apply to any claims of unconstitutionality. Likewise, RCW 49.60 is a "neutral, generally applicable law subject to rational basis review." *State v. Arlene's Flowers, Inc.*, 193 Wn.2d 469, 523, 441 P.3d 1203 (2019), *cert. denied*, 141 S. Ct. 2884 (2021). The WLAD is rationally related to the government's legitimate interest in the "elimination and prevention of discrimination in employment." RCW 49.60.010.

If, however, this Court were to give serious consideration to the constitutional challenges Defendant appears to be making to Title VII and the WLAD as applied to Plaintiff's claims, then the court *must*, under 28 U.S.C. § 2403, certify to the Attorney General of the United States that there is a constitutional challenge to a federal statute, and to certify to the Washington Attorney General that there is a constitutional challenge to a state statute. *See, e.g., Lucarelli v. Hershey Co.*, CASE NO. C07-1314RSM, 2007 U.S. Dist. LEXIS 79257, at *2 (W.D. Wash. Oct. 11, 2007). However, because Defendant's constitutional challenges to applying Title VII and WLAD to the claims in this case are so utterly without merit, the Court can reject them without going through the certification required by 28 U.S.C. § 2403.

**E.      Defendant's Religious Autonomy is Without Merit.**

Defendant additionally contends that Plaintiff's claims are barred by the religious autonomy doctrine, opining that courts should not be deciding issues of conformity to religious moral standards. Dkt. 26 at p. 21. However, the religious autonomy doctrine is the reason for the ministerial exception. To this end, the "ministerial exception is a subset of the religious autonomy doctrine" and the Supreme Court held in *Hosanna-Tabor* that "'both [the Free Exercise and

NISAR LAW GROUP, P.C.
60 East 42nd Street, Ste. 4600
New York, NY 10165
Ph: (646) 889-1007

Establishment Clauses of the First Amendment] bar the government from interfering with the decision of a religious group to fire one of its ministers.'" *Cedar Park Assembly of God of Kirkland v. Kreidler*, CASE NO. C19-5181 BHS, 2022 U.S. Dist. LEXIS 31058, at *8 (W.D. Wash. Feb. 22, 2022) (quoting *Hosanna-Tabor*, 565 U.S. at 181) (edit omitted). Defendant's religious autonomy argument is simply a generalized rearguing of the ministerial exception, which was addressed above. Because Defendant's ministerial exception defense fails, its religious autonomy argument fails as well.

### III. CONCLUSION

Although there are no genuine material disputes of fact, Defendant is not entitled to judgment as a matter of law. As set forth in Plaintiff's Motion for Summary Judgment, she is entitled to judgment as a matter of law on all claims. Accordingly, the Court should deny Defendant's Motion for Summary Judgment.

RESPECTFULLY SUBMITTED this 1st day of May 2023.

**NISAR LAW GROUP, P.C.**

By: _/s/ Casimir Wolnowski
Casimir Wolnowski
One Grand Central Place
60 East 42nd Street, Suite 4600
New York, New York 10165
Phone: (646) 889-1007
Fax:  (516) 604-0157
Email : cwolnowski@nisarlaw.com
Admitted *Pro Hac Vice*

I certify that this memorandum contains 6,309 words in compliance with the Court's Order of April 5, 2023 (Dkt # 21).

1

2

**FRANK FREED SUBIT & THOMAS LLP**

3

By:  /s/ Michael C. Subit
Michael C. Subit, WSBA No. 29189

4

705 Second Avenue, Suite 1200
Seattle, Washington 98104

5

Phone: (206) 682-6711
Fax:  (206) 682-0401

6

Email:  msubit@frankfreed.com

7

*Attorneys for Plaintiff*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

PLAINTIFF'S S.J. OPPOSITION - Page 22
2:21-CV-00920-JLR