**Hon. James L. Robart**

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

AUBRY MCMAHON,

      Plaintiff,

    v.

WORLD VISION, INC.,

      Defendant.

Case No.:  2:21-cv-00920-JLR

**PLAINTIFF'S REPLY IN
SUPPORT FOR HER MOTION
FOR SUMMARY JUDGMENT**

**NOTE DATE: MAY 5, 2023**

### I.      OVERVIEW

The parties agree that this case presents undisputed facts. Defendant, however, profoundly misapprehends the relevant legal issues. This case does not involve a theological religious dispute. This case does not involve a termination for sexual conduct. This case does not involve claims of religious discrimination. This case does not involve an employer giving pretextual reasons for its actions. What this case involves is a facially discriminatory policy that prohibits the employment of anyone in a same-sex marriage. Under controlling U.S. Supreme Court and Washington State precedent, Defendant's rescission of its job offer of customer service representative to Plaintiff because it learned she was in a same-sex marriage constitutes unlawful discrimination on the basis of sex, sexual orientation and marital status. That Defendant's discriminatory conduct was motivated by its sincere religious beliefs but doesn't make it less invidious. Neither the Title VII

PLAINTIFF'S REPLY
Page 1
2:21-CV-00920-JLR

NISAR LAW GROUP, P.C.
60 East 42nd Street, Ste. 4600
New York, NY 10165
Ph: (646) 889-1007

nor WLAD religious employer exemptions provide World Vision with immunity for its otherwise unlawful conduct. Defendant has failed to prove that the customer service representative position from which Plaintiff was removed falls within the First Amendment ministerial exception. Defendant's plethora of other affirmative defenses all fail as a matter of law. Plaintiff is entitled to summary judgment on liability with respect to all her claims.

## II.   PLAINTIFF HAS PROVEN HER DISCRIMINATION CLAIMS AS A MATTER OF LAW

Plaintiff's summary judgment motion demonstrates she has established her discrimination claims as a matter of law and nothing in Defendant's opposition alters that. Contrary to what Defendant contends, Dkt. No. 32 at pp. 8-9, *Opara v. Yellen*, 57 F.4th 709, 722 (9th Cir. 2023), reiterates that "[n]othing compels reliance on the *McDonnell Douglas* factors…. [A] plaintiff may alternatively offer direct or circumstance evidence of discriminatory motive.…" Here, Defendant has a facially discriminatory employment policy that it admits caused the recission of Plaintiff's job offer. World Vision acknowledges that if Plaintiff had been a man married to a woman, she would not have been in violation of World Vision's standards of conduct insofar as they related to same-sex marriage. In fact, Christine Talbot ("Talbot")—a person who held the position of senior vice president of human resources with World Vision—stated at her deposition: "If [Plaintiff] was a man and was married to a woman and was willing to affirm, you know, living in accord with the standards of conduct, not in a same-sex marriage, but married to someone of the opposite sex, that would make [Plaintiff] eligible for employment as it related to that particular requirement." Dkt. 25, Exh. 12, at 68:12-69:5. Melanie Freiberg ("Freiberg")—a person who held the position of "HR Director talent management" with World Vision—reiterated that it would not be possible for somebody in a same-sex marriage to be in compliance with World Vision's expectation

surrounding marriage. Dkt. 25, Exh. 13, at 102:15-22.

Defendant's claim that it would hire employees of any sexual orientation as long as they agree to comply with its policy forbidding sexual activity outside of heterosexual marriage is discrimination by any other name. Dkt. No. 32 at p. 6. "[A]n employer who intentionally treats an employee worse because of sex—such as by firing the person for actions or attributes it would tolerate in an individual of another sex—discriminates against that person in violation of Title VII." *Bostock v. Clayton Cty, GA*, 140 S. Ct. 1731, 1740 (2020). World Vision's assertion that *Bostock* just protects someone from being fired "simply for being homosexual," Dkt. No. 32 at pp. 11-12, is contrary to the plain language of the decision.[1] Defendant concedes that if Plaintiff had been a man married to a woman, World Vision would have not revoked her employment offer. That admission establishes discrimination as a matter of law on the basis of sex, sexual orientation, and marital status. Dkt. No. 24 at pp. 6-10.

Defendant has not introduced anything that refutes this. Rather, in its Motion for Summary Judgment and Opposition, World Vision seeks to reframe its decision to revoke Plaintiff's job offer as based on a theological disagreement which is beyond court jurisdiction. Dkt. 32 at p. 2. However, none of the views expressed by Plaintiff regarding Christianity, marriage, "promoting same-sex marriage" (to the extent selling homemade products online with the slogan 'Love is a Terrible Thing to Hate' promotes same-sex marriage) were known by World Vision at the time it made the decision to rescind its job offer to her. On the contrary, the only thing World Vision knew was that Plaintiff was in a same-sex marriage. And her being in a same-sex marriage was the sole reason for its decision to revoke the offer. Dkt. 25, Exh. 12 at 58:22-24. All other facts relied upon

---

[1] *Bear Creed Bible Church v. EEOC*, 571 F. Supp. 3d, 571 (N.D. Tex. 2021), *appeal filed*, is likewise inconsistent with *Bostock* and contrary to Ninth Circuit precedent. This Court should not follow it.

NISAR LAW GROUP, P.C.
60 East 42ⁿᵈ Street, Ste. 4600
New York, NY 10165
Ph: (646) 889-1007

by Defendant in its Motion for Summary Judgment and Opposition were first learned at Plaintiff's deposition, which was held on February 24, 2023. Dkt. 25, Exh. 9. Defendant's claim that "living openly in a [same sex marriage] embodies an ongoing public stance promoting such conduct," Dkt. No. 32 at p. 7, is blatantly homophobic.

Defendant also attempts to construe this dispute as one involving conduct—namely sexual conduct—rather than protected status. Defendant argues in its Opposition that Christians "must confine their sexual conduct to Biblical marriage, or abstain," Dkt. 32 at p. 14, and by virtue of being in a same-sex marriage, she was refusing to abide by this directive which provided the basis for World Vision to revoke its job offer. This argument fails. As detailed in Plaintiff's Opposition, if Defendant had an "abstinent employees only" policy, then that would not likely violate either Title VII or the WLAD. But Defendant doesn't have a policy that forbids hiring anyone who engages in sexual conduct. Rather, Defendant has a policy that forbids hiring anyone who engages in sexual conduct outside of a heterosexual marriage. Whether an employee violates that policy by engaging in sexual conduct depends entirely on the employee's sex, sexual orientation, and marital status. It is simply not possible to separate Plaintiff's conduct from her statuses of being female and in a same-sex marriage. *See Busey v. Richland Sch. Dist.*, 172 F. Supp. 3d 1167 (E.D. Wash. 2016).

Lastly, as to Plaintiff's marital status discrimination claim under WLAD, Talbot testified that an applicant's being gay, in and of itself, would not be the basis for Defendant rescinding a job offer. Exh. 12, at 45:22-46:8. Defendant admits that for "World Vision, sexual conduct is inseparable from marriage," Dkt. No. 32 at p. 3. Thus, had Plaintiff been merely gay and unmarried, her offer of employment would not have been rescinded. In other words, the fact that she was *married* to a woman was indisputably a substantial factor (and in fact the but-for cause)

in her suffering an adverse employment action. Defendant has presented absolutely no proof which rebuts this.

In sum, it is undisputed that Defendant revoked Plaintiff's job offer because it learned she was in a same-sex marriage and for no other reason. Dkt. No. 32 at pp. 5-6. That act constituted unlawful and invidious discrimination under both federal and Washington law.

### III.   DEFENDANT'S AFFIRMATIVE DEFENSES FAIL AS A MATTER OF LAW

In its Opposition, Defendant argues that Plaintiff has failed to overcome each and every affirmative defense interposed by it. This is incorrect.

### A.   The Title VII Religious Employer Exemption Applies only to Claims of Religious Discrimination and Plaintiff Has Not Brought Such a Claim

As stated in Plaintiff's Motion for Summary Judgment, the Ninth Circuit has squarely limited the federal religious employer exemption to bar claims of *religious* discrimination, holding that while religious institutions may base relevant employment decisions upon religious preferences, "[they] are not immune from liability... for discrimination" on other grounds protected by Title VII. *E.E.O.C. v. Fremont Christian Sch.*, 781 F.2d 1362, 1366 (9th Cir. 1986). Defendant seeks to recast Plaintiff's claims as ones alleging religious discrimination, however, this attempt cannot change the fact that Plaintiff explicitly brought claims under Title VII and WLAD alleging only discrimination due to her sex (female), sexual orientation (gay) (under both Title VII and WLAD), and marital status (married to a person of the same sex) (under WLAD only). Dkt. No. 1. Because none of these claims allege religious discrimination, Defendant cannot avail itself of the Title VII religious employer exemption.

### B.   The Ministerial Exception Does Not Bar Plaintiff's Claims

Plaintiff has thoroughly addressed the First Amendment's ministerial exception in both her

NISAR LAW GROUP, P.C.
60 East 42nd Street, Ste. 4600
New York, NY 10165
Ph: (646) 889-1007

Motion for Summary Judgment and Opposition. Defendant continues to argue that because it has a "pervasively Christian workplace," Dkt. No. 32 at p. 20 n. 20, all of its employees including customer service representatives qualify as "ministers." That is not the law. An employer who asserts the ministerial exception must affirmatively prove both that (1) it is religious institution and (2) the plaintiff was a ministerial employee. *DeWeese-Boyd v. Gordon College*, 487 Mass. 31, 43-45,163 N.E.3d 1000 (2021). Defendant has introduced a wealth of evidence in support of the first proposition, which Plaintiff does not dispute. However, World Vision has failed to prove that had it not revoked her job offer, Plaintiff would have been "a ministerial employee."

First and foremost, Defendant does not dispute that the job title of customer service representative or Donor/Customer Service Representative (DCR Trainee) in no way implies that the position is ministerial in nature. *Cf. Conlon v. Intervarsity Christian Fellowship/USA*, 777 F.3d 829, 8345-35 (6th Cir. 2015) ("spiritual director" and "spiritual formation specialist" are titles that identify as somebody covered by the ministerial exception, as do employees with the titles of "pastor," "reverend," "priest," "bishop," or "rabbi"). Rather, the job title of customer service representative is purely secular. Also, there is nothing in the job description of a customer service representative that suggests these were employees with "vital religious duties," or those "playing a vital part in carrying out the mission of the church," and whose roles are important "in the life of the religion." *Our Lady of Guadalupe School v. Morrissey-Berru*, 140 S. Ct. 2049, 2064-66 (2020).

Further, Defendant does not refute Plaintiff's averment that World Vision does not hold customer service representatives out to the public as ministers, *cf. Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 191 (2012), or that there is no requirement that a candidate for this position have any formal religious educational training. Dkt. 25, Exh. 10, at

13:13-21. In fact, there is no requirement to have had *any* religious training whatsoever and the only formal education requirement for a customer service representative is to be a high school graduate or have a GED equivalent. Exh. 10, at 13:22-14:3, 14:22-15:3.

Similarly, Defendant does not contest that there is no process for commissioning a customer service representative as a minister, Dkt. 25, Exh. 10, at 15:19-16:3, *cf. Hosanna-Tabor*, 565 U.S. at 191, or that per the job description, the tasks associated with the customer service representative position are to "learn, understand and develop the skills necessary to acquire and maintain donor relationships through basic inbound and outbound calls. … [s]erve as a liaison between donors and the general public as well as provide basic levels of customer service for all special programs." Dkt. 25, Exh. 1. Indeed, the main duty of a customer service representative is to "acquire and maintain donor relationships through the basic inbound and outbound calls." Dkt. 25, Exh. 10, at 20:20-24. Nothing about this suggests ministerial duties.

In its Opposition, Defendant emphasizes the role of prayer for customer service representatives, both in chapel services and with donors. However, Defendant fails to acknowledge that *attending chapel* is a requirement for employment as a customer service representative with World Vision whereas *leading chapel* is not.

With respect to praying with donors, Defendant dedicates numerous pages in its Opposition to its argument surrounding prayer and the role it plays with the customer service representative position. Defendant relies on call transcripts and asserts that as a customer service representative, "Plaintiff's responsibilities would include praying faithfully with donors," Dkt. 32 at p. 24, and that "[s]uch prayer [by customer service representatives] is expected and encouraged." Dkt. 32 at p. 25.

However, these averments are not supported by the record. The job description merely

PLAINTIFF'S REPLY
Page 7
2:21-CV-00920-JLR

NISAR LAW GROUP, P.C.
60 East 42nd Street, Ste. 4600
New York, NY 10165
Ph: (646) 889-1007

advises customer service representatives to "pray with [donors] *when appropriate*," Dkt. No. 25, Exh. 1, at WV000049 (emphasis supplied), and Freiberg unambiguously testified that although praying with donors is *encouraged*, it is not a job requirement for the position of a customer service representative. Dkt. No. 25, Exh. 10, at 24:2-11. Her testimony is confirmed by a "guidance document," Dkt. No. 25, Exh. 10, at 26:20-25, bearing the heading "Showing Empathy on a Call During a Crisis (Talking Points)." This document was used to assist customer service representatives in communicating with donors. Under each heading there is a sentence which reads: "If comfortable, offer to pray with the donor over the phone." Dkt. No. 25, Exh. 14. Freiberg clarified that this sentence is intended to inform the customer service representative that he or she has a choice to offer to pray rather than it being mandatory, and that "there is not … disciplinary action if [the customer service representatives] don't pray [with donors]." Dkt. No. 25, Exh. 10, at 30:14-23.

Further, donors are not members of World Vision, and in fact, are not even exclusively of the Christian faith. Dkt. No. 25, Exh. 10, at 22:24-23:4. Also, the role and responsibilities of a customer service representative are distinctly different from those of teachers and counselors at a religious school—positions about which litigation in this subject area has predominated. *See, e.g., Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049 (2020) (the plaintiffs were teachers at Catholic primary schools); *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171 (2012) (the plaintiff was a teacher at an evangelical Lutheran school); *Fitzgerald v. Roncalli High Sch., Inc.*, No. 1:19-cv-04291-RLY-TAB, 2022 U.S. Dist. LEXIS 203236 (S.D. Ind. Sep. 30, 2022) (the plaintiff was a guidance counselor at a Catholic high school); *Fratello v. Roman Catholic Archdiocese of N.Y.*, 175 F. Supp. 3d 152 (S.D.N.Y. 2016) (the plaintiff was a principal at a Catholic elementary school). "The religious education and formation

NISAR LAW GROUP, P.C.
60 East 42nd Street, Ste. 4600
New York, NY 10165
Ph: (646) 889-1007

of students is the very reason for the existence of most private religious schools, and therefore selection and supervision of the teachers upon whom the schools rely to do this work lie at the core of their mission." *Our Lady of Guadalupe*, 140 S. Ct. at 2055. By contrast, the primary function of the customer service representative position for which Defendant refused to employ Plaintiff was to answer calls from and make outbound calls to donors. The fact that some or even many customer services representatives prayed with donors while performing those job functions does not make them all ministers.

As the Massachusetts Supreme Court recently recognized in *DeWeese-Boyd*, "the potential for conflict between the[ ] fundamental legal principles" of First Amendment religious autonomy and the right to obtain and hold employment without discrimination on the basis of sexual orientation or another legally protected characteristic "is therefore of obvious and great concern, not only to the individual plaintiffs, but also for our civil society and religious institutions." 417 Mass. at 42. "While it may be true that … Christians have an undeniable call to minister to others," that does not make all Christians "necessarily ministers" under *Our Lady of Guadalupe* and *Hosanna-Tabor. Id.* at 48 (internal quotation marks omitted). Defendant's contention that the customer service representative position from which Plaintiff was removed falls within the ministerial exception is unsupported by Supreme Court precedent and would enormously expand the exception to the point of "its eclipsing and eliminati[ng] … civil law protection against discrimination." *Id.* at 54.

In sum, Plaintiff is entitled to summary judgment on Defendant's affirmative defense that the ministerial exception immunizes it from liability for its otherwise unlawful discriminatory conduct.

## C.    Defendant's BFOQ Defense Fails

NISAR LAW GROUP, P.C.
60 East 42ⁿᵈ Street, Ste. 4600
New York, NY 10165
Ph: (646) 889-1007

1   In its Opposition, Defendant argues that its requirement for employees to comply with its

2   "Biblical conduct standards" which forbid being in a same-sex marriage is a bona fide

3   occupational qualification (which it refers to shorthand as "BFOQ"). However, these Title VII and

4   WLAD BFOQ defenses both fail as a matter of law. Defendant requires married employees to be

5   in a heterosexual marriage as a condition of employment. Such a requirement does not constitute

6   an "occupational qualification" within the meaning of the statutes because the requirement in no

7   way relates to the "job-related skills and aptitudes" of a customer service representative. *United*

8   *Auto., Aerospace & Ag. Implement Workers of Am., UAW, v. Johnson Controls, Inc.*, 499 U.S.

9   187, 201 (1991). Whether Plaintiff was in a same-sex or heterosexual marriage had no impact on

10   her ability to do the customer service representative job.

11   **D.     Defendant's Religious Autonomy Defense Fails**

12   Defendant contends in its Opposition that Plaintiff's claims are barred by Religious

13   Autonomy—commonly referred to as the church autonomy doctrine. Defendant argues, in essence,

14   that Plaintiff's claims would impermissibly impinge upon a religious organization's autonomy

15   because they require a court evaluation of internal religious policies. *See, e.g., Bohnert v. Roman*

16   *Catholic Archbishop of San Francisco*, 136 F. Supp. 3d 1094, 1115 (N.D. Cal. 2015). This is

17   essentially its argument that Plaintiff was fired on religious theological grounds but packaged in a

18   different way. However, once again, as this case is not one regarding a religious theological dispute

19   and Plaintiff's claims clearly regard discrimination on the basis of sex, sexual orientation and being

20   in a same-sex marriage, Defendant's contention fails. The Supreme Court has made clear that the

21   "constitutional foundation" for the ministerial exception is "the general principle of church

22   autonomy." *Our Lady of Guadalupe*, 140 S. Ct. at 2061. Because Defendant's ministerial

23   exception affirmative defense fails, so does its church autonomy affirmative defense.

24

PLAINTIFF'S REPLY
Page 10
2:21-CV-00920-JLR

1    **E.    Defendant's Remaining Affirmative Defenses Fail**

2          As previously mentioned, the vast majority of Defendant's affirmative defenses provide

3    little to no specificity as to what specific facts form the bases for these defenses. In Defendant's

4    Opposition, it contends that the specificity as to the facts which form the bases for these defenses

5    are contained in separate documents, namely Defendant's Responses to Plaintiff's First Set of

6    Interrogatories (which it refers to as "Defs. RPFSI"). However, Defendant conveniently omits that

7    the "explanations" for the affirmative defenses which Plaintiff describes as a "hodgepodge of

8    affirmative defenses grounded in the First Amendment and other constitutional provisions," Dkt.

9    24 at p. 24, are mostly threadbare and provide little to no clarity as to how they differentiate from

10   the other Constitutional affirmative defenses (which Plaintiff has substantively addressed in her

11   Motion for Summary Judgment and Opposition).

12         In fact, oftentimes the extent of the explanations is simply referring to one another, such as

13   its explanation for its thirty-eighth affirmative defense, which reads: "World Vision incorporates

14   by reference its answers to the foregoing sub-parts of this Interrogatory regarding Affirmative

15   Defenses Nos. 1 through 38, inclusive, including in particular (but not limited to) sub-parts (24),

16   (25), (26), (31), (32), (33), and (34)." On several other instances, Defendant's Responses to

17   Plaintiff's First Set of Interrogatories simply advise that the affirmative defense is "primarily legal

18   in nature," without any specificity, such as its Affirmative Defense No. 30, which reads: "World

19   Vision incorporates by reference its answers to the foregoing sub-parts of this Interrogatory

20   regarding Affirmative Defenses Nos. 1 through 29, inclusive. This Affirmative Defense is

21   primarily legal in nature."

22         In any event, Defendant fails to substantively address Plaintiff's contention that the

23   ministerial exception is the only constitutional defense potentially available to it with respect to

24

Plaintiff's statutory discrimination claims. Any other constitutional defense fails as a matter of law.

## IV.     CONCLUSION

There are no genuinely disputed issues of material fact and Plaintiff is entitled to judgment as a matter of law on her claims of discrimination on account of her sex (female), sexual orientation (gay), and marriage status (married to a person of the same sex). Accordingly, the Court should enter summary judgment in Plaintiff's favor with respect to liability on all claims.

RESPECTFULLY SUBMITTED this 5th day of May 2023.

**NISAR LAW GROUP, P.C.**

By: */s/ Casimir Wolnowski*
Casimir Wolnowski
One Grand Central Place
60 East 42nd Street, Suite 4600
New York, New York 10165
Phone: (646) 889-1007
Fax:  (516) 604-0157
Email : cwolnowski@nisarlaw.com
Admitted *Pro Hac Vice*

I certify that this memorandum contains 3,354 words in compliance with the Court's Order of April 5, 2023 (Dkt # 21).

**FRANK FREED SUBIT & THOMAS LLP**

By: */s/ Michael C. Subit*
Michael C. Subit, WSBA No. 29189
705 Second Avenue, Suite 1200
Seattle, Washington 98104
Phone: (206) 682-6711
Fax:  (206) 682-0401
Email: msubit@frankfreed.com

*Attorneys for Plaintiff*

PLAINTIFF'S REPLY
Page 12
2:21-CV-00920-JLR

NISAR LAW GROUP, P.C.
60 East 42nd Street, Ste. 4600
New York, NY 10165
Ph: (646) 889-1007