1

**Hon. James L. Robart**

2

3

4

5

6

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

7

AUBRY MCMAHON,

8

              Plaintiff,

Case No.:  2:21-cv-00920-JLR

9

    v.

**PLAINTIFF'S MOTION FOR**
**RECONSIDERATION AND TO**
**ALTER JUDGMENT**

10

WORLD VISION, INC.,

11

              Defendant.

**NOTE DATE: JUNE 27, 2023**

12

13

       Pursuant to Local Rule 7(h) and Fed. R. Civ. P. 59(e), plaintiff Aubry McMahon

14

("Plaintiff") files this motion for reconsideration of the Court's summary judgment rulings and to

15

alter the judgment entered in favor of defendant World Vision, Inc. ("Defendant" or "World

16

Vision"). Plaintiff respectfully suggests the Court committed manifest error by holding the Church

17

Autonomy Doctrine bars the claims of a non-ministerial employee who was terminated pursuant

18

to a hiring policy that facially discriminates on the basis of sex, sexual orientation, and marital

19

status by barring anyone in a same-sex marriage from employment. None of the prior cases

20

applying the Church Autonomy Doctrine involved an adverse action taken per a facially

21

discriminatory hiring policy. This Court's decision constitutes an unprecedented expansion of that

22

doctrine. If not reconsidered, the Court's decision will tear a gaping hole in the fabric of anti-

23

discrimination law for non-ministerial employees of religious organizations nationwide.

24

PLAINTIFF'S MOTION TO RECONSIDER
Page 1
2:21-CV-00920-JLR

NISAR LAW GROUP, P.C.
60 East 42nd Street, Ste. 4600
New York, NY 10165
Ph: (646) 889-1007

This Court correctly recognized that the Church Autonomy Doctrine "may bar a non-ministerial employee's employment claims against a religious employer *in certain limited circumstances*." Dkt. No. 38 at 18 (emphasis supplied). However, the Court incorrectly determined this case was one of those limited circumstances. Plaintiff's summary judgment filings made clear resolution of this case requires only application of neutral principles of law. The Court manifestly erred to the extent its opinion suggests that Plaintiff's Title VII and WLAD claims "call[] into question the reasonableness, validity, or truth of a religious doctrine or practice." *Id.* at 16. Plaintiff does not dispute World Vision's refusal to hire anyone who is in a same-sex marriage is based upon sincerely held religious beliefs. But no other court has ruled that if a religious employer asserts a religious justification for a facially discriminatory hiring policy, the Church Autonomy Doctrine immunizes that policy from judicial scrutiny under civil law.

The Court manifestly erred by relying on *Butler v. St. Stanislaus Kostka Catholic Acad.*, 609 F. Supp. 3d 184 (E.D.N.Y. 2022), to dismiss Plaintiff's claims. Firstly, *Butler*'s discussion of the Church Autonomy Doctrine was dicta as the court had already ruled that the ministerial exception applied. Secondly, *Butler* invoked the Church Autonomy Doctrine "*on the record of this case*" only because the plaintiff had relied on the *McDonnell Douglas* burden shifting framework and claimed that the employer's explanation for his termination—that he had sent an email saying he was planning to marry his boyfriend sometime in the future—was a *pretext* for sexual orientation discrimination. 609 F. Supp. 3d at 198, 200. Butler did *not* argue that he was terminated pursuant to a facially discriminatory hiring policy. Instead, he challenged "the plausibility of St. Stans' asserted religious justifications in this case." *Id.* at 204. The *Butler* court therefore ruled "the only way for the jury to find pretext would be to question the Church's explanation of religious

NISAR LAW GROUP, P.C.
60 East 42nd Street, Ste. 4600
New York, NY 10165
Ph: (646) 889-1007

doctrine, or to question how much that particular religious doctrine really mattered to the Church. To do so, however, would violate the church-autonomy principle." *Id.* at 203 (footnote omitted).

Such concerns are entirely absent from this case. Plaintiff never invoked the *McDonnell Douglas* framework. Nor did she claim that Defendant's explanation for rescinding her job offer, its discovery that she was in a same-sex marriage, was a pretext. A "gender-based [employment] policy is not a pretext for discrimination—it is per se intentional discrimination." *Frank v. United Airlines, Inc.*, 216 F.3d 845, 854 (9th Cir. 2000) (quoting *Healey v. Southwood Psychiatric Hosp.*, 78 F.3d 128, 131-32 (3d Cir. 1996) (pretext analysis is "inapt" where case involves facially discriminatory policy)).[1] Defendant's policy of refusing to hire anyone who is in a same-sex marriage violates Title VII and the WLAD because that policy facially discriminates with respect to sex, sexual orientation, and marital status. As argued in Plaintiff's motion for summary judgment, to decide Plaintiff's affirmative legal claims, the Court needed to ask only a simple question: but for Plaintiff's being a woman, would she have been fired for being married to a woman? The answer to that question is indisputably "no." Therefore, no further proof of discriminatory intent is required. *Frank*, 216 F.3d at 854 (where a claim of discriminatory treatment is based upon a policy that is discriminatory on its face, the plaintiff need not otherwise establish the presence of discriminatory intent).

In describing the limited reach of the Church Autonomy Doctrine, *Butler* relied upon *De Marco v. Holy Cross High Sch.*, 4 F.3d 166 (2d Cir. 1993), which this Court also cited. Dkt. No. 38 at 16-17. Reversing the district court, *De Marco* held that the Church Autonomy Doctrine does not bar statutory claims of discrimination where the employer claims that it acted for religious

---

[1] Therefore, the Court manifestly erred by requiring Plaintiff to show pretext in addition to proving that discrimination was a but-for cause of Defendant's actions. *Cassino v. Reichhold Chems., Inc.*, 817 F.2d 1338, 1343-44 (9th Cir. 1987).

PLAINTIFF'S MOTION TO RECONSIDER
Page 3
2:21-CV-00920-JLR

1    reasons if a non-ministerial plaintiff can show a protected characteristic was a but-for cause of the

2    employer's adverse action. *Id.* at 172. In further support of that constitutional holding, *De Marco*

3    reasoned that applying the Church Autonomy Doctrine to such a case would undermine Congress's

4    decision to apply to statutory discrimination laws to religious institutions other than with respect

5    to claims of religious discrimination. *Id.* at 172-73. *De Marco* demonstrates the error of this Court's

6    application of the Church Autonomy Doctrine to a case where it is factually undisputed that

7    Plaintiff's protected characteristics were but-for causes of Defendant's adverse action against her.

8        *Bryce v. Episcopal Church in the Diocese of Colo.*, 289 F.3d 648, 654 (10th Cir. 2002), also

9    lends no support to this Court's decision. There, the plaintiff claimed that the defendants

10   "subjected her to sexual harassment based on public statements which characterized homosexual

11   activities in a harassing and humiliating manner." *Bryce v. Episcopal Church in the Diocese of*

12   *Colo.*, 121 F. Supp. 2d 1327, 1339 (D. Colo. 2000). The Tenth Circuit's ruling that the plaintiff's

13   action was barred by the Church Autonomy Doctrine was quite narrow in that it protected *the*

14   *speech* engaged in by the church: "The defendants' alleged statements fall squarely within the

15   areas of church governance and doctrine protected by the First Amendment." 289 F.3d at 658.

16       Similarly in *EEOC v. Catholic Univ. of Am.*, 83 F.3d 455 (D.C. Cir. 1999), the court found

17   that the plaintiff—a nun who brought an action alleging her denial of tenure was made on the basis

18   of her sex—was unable to bring her discrimination claims on First Amendment grounds as the

19   case had devolved into a battle of religious experts "concerning the quality of [the plaintiff's]

20   publications" which were naturally of a religious nature. *Id.* at 465. The district court had dismissed

21   the action on the premise that it was "neither reasonably possible nor legally permissible for a lay

22   trier of fact to evaluate these competing opinions on religious subjects." *EEOC v. Catholic Univ.*

23

24

NISAR LAW GROUP, P.C.
60 East 42nd Street, Ste. 4600
New York, NY 10165
Ph: (646) 889-1007

*of Am.*, 856 F. Supp. 1, 9 (D.D.C. 1994). This rationale was adopted by the Circuit Court. 83 F.3d at 466. No such concerns are present in this case.

*Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130 (3d Cir. 2006), relied upon by the Court and Defendant, is distinguishable as well. There, the plaintiff—a teacher employed at a Catholic school—was fired for signing her name to a pro-choice advertisement in a local newspaper and thereafter refusing to recant her support and state publicly that she was pro-life. *Id.* at 132-33. The plaintiff brought a disparate treatment claim under Title VII alleging that certain male co-workers (one who was Jewish and one who had opposed the war in Iraq) had been treated less harshly for conduct which was, according to her, similar in scope as it related to Catholic doctrinal violations. *Id.* at 137, 139. The Third Circuit concluded that evaluating the comparators would require "an analysis of Catholic doctrine" in order to determine whether those alleged "affront[s]" were at least the same level of seriousness as Plaintiff's. *Id.* at 140. Here, no comparative analysis of religious precepts is required to conclude that Plaintiff's sex, sexual orientation, and marital status were but-for causes of the revocation of her job offer.

In *Garrick v. Moody Bible Inst.*, 412 F. Supp. 3d 859, 871-872 (N.D Ill. 2019), the district court held that the Church Autonomy Doctrine precluded it from deciding plaintiff's claims that she was fired for advocating in favor of the inclusion of women in the ministry. "Garrick's disagreement with Moody's beliefs on the role of women in the ministry underlies the majority of Garrick's allegations." *Id*. at 872. Here, by contrast, it is undisputed that World Vision revoked its job offer to McMahon pursuant to a hiring policy that facially discriminates on the basis of sex, sexual orientation, and marital status. That Defendant asserted a religious justification for its facially discriminatory hiring policy does not turn this case into "a religious disagreement."

NISAR LAW GROUP, P.C.
60 East 42nd Street, Ste. 4600
New York, NY 10165
Ph: (646) 889-1007

As this Court recognized, neither the U.S. Supreme Court nor the Ninth Circuit has directly spoken to how the Church Autonomy Doctrine interacts with the ministerial exception in employment discrimination cases. Dkt. No. 38 at p. 17. *Starkey v. Roman Catholic Archdiocese of Indianapolis*, 496 F. Supp. 3d 1195, 1206-1207 (S.D. Ind. 2020), directly (and in Plaintiff's view correctly) held that where, as here, a religious employer takes an adverse action pursuant to a hiring policy that facially discriminates on the basis of sexual orientation, the Church Autonomy Doctrine does not provide the employer with any greater protection than the ministerial exception. Plaintiff's summary judgment briefing should not have assumed this Court would follow *Starkey*. While Plaintiff should have addressed and distinguished the employment-related Church Autonomy Doctrine cases cited in Defendant's summary judgment briefing, the Court should have nevertheless held as a matter of law that the Doctrine is inapplicable here.

The Court erroneously framed the question presented in this case as whether "the Church Autonomy Doctrine requires abstention where at least one of the 'but for' causes [for the adverse action] is a religious justification." Dkt. No. 38 at n. 11. This confuses causation and justification. "Whether an employment practice involves disparate treatment through explicit facial discrimination does not depend on why the employer discriminates but on the explicit terms of the discrimination." *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., UAW, v. Johnson Controls, Inc.*, 499 U.S. 187, 199 (1991). If a religious employer refuses to hire a non-ministerial employee because of their race, that is still illegal race discrimination even where the employer believes the discrimination is religiously justified by the Curse of Ham. If a religious employer refuses to hire a non-ministerial employee because of their sex, that is still illegal sex discrimination even where the employer believes the sex discrimination is religiously justified because Eve was taken from Adam's rib. And if a religious employer refuses to hire a non-

ministerial employee because they are in a same-sex marriage, that is still illegal discrimination on the basis of sex, sexual orientation, and marital status even where the employer disapproves of same-sex marriage on religious grounds. A religious employer's religious justification for unlawful discrimination is not causally separate from the discrimination itself.[2]

It is undisputed that Plaintiff's sex, sexual orientation, and marital status were but-for causes of Defendant's revocation of its job offer to her pursuant to its facially discriminatory employment policy against hiring individuals who are in same-sex marriages. Because Plaintiff is not a minister and has not brought claims for religious discrimination, it makes no legal difference that Defendant justified its discriminatory actions against her on religious grounds. The Court's unprecedented invocation of the Church Autonomy Doctrine to bar Plaintiff's claims leaves non-ministerial employees of religious organizations without the anti-discrimination protections Congress and the Washington legislature intended them to have.

In sum, this Court should grant Plaintiff's motion for reconsideration, vacate the judgment entered in favor of Defendant, and grant Plaintiff's motion for summary judgment as to liability.

RESPECTFULLY SUBMITTED this 27th day of June 2023.

**NISAR LAW GROUP, P.C.**

By:  */s/ Casimir Wolnowski*
Casimir Wolnowski
One Grand Central Place
60 East 42nd Street, Suite 4600
New York, New York 10165
Phone: (646) 889-1007
Fax:  (516) 604-0157
Email : cwolnowski@nisarlaw.com

---

[2] Accordingly, the Court also manifestly erred by holding that Defendant's religious *justification* of its facially discriminatory hiring policy constitutes a "legitimate, non-discriminatory reason" for Defendant's adverse action against Plaintiff. Dkt. No. 38 at 19-20. As a matter of law, there cannot be a *non-discriminatory* reason for a facially discriminatory hiring policy. *See Frank*, 216 F.3d at 854 (citing *Healey*, 78 F.3d at 131-32 (typical shifting burden procedure does not apply to "facial" disparate treatment cases)).

PLAINTIFF'S MOTION TO RECONSIDER
Page 7
2:21-CV-00920-JLR

NISAR LAW GROUP, P.C.
60 East 42nd Street, Ste. 4600
New York, NY 10165
Ph: (646) 889-1007

1

Admitted *Pro Hac Vice*

2

I certify that this memorandum contains 2,067 words in compliance with section 7(e) of the Local Rules of practice for civil proceedings before the U.S. District Court for the Western District of Washington.

3

4

5

**FRANK FREED SUBIT & THOMAS LLP**

6

By: */s/ Michael C. Subit*
Michael C. Subit, WSBA No. 29189

7

705 Second Avenue, Suite 1200
Seattle, Washington 98104

8

Phone: (206) 682-6711
Fax:  (206) 682-0401

9

Email: msubit@frankfreed.com

10

*Attorneys for Plaintiff*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

PLAINTIFF'S MOTION TO RECONSIDER
Page 8
2:21-CV-00920-JLR

NISAR LAW GROUP, P.C.
60 East 42nd Street, Ste. 4600
New York, NY 10165
Ph: (646) 889-1007