1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7
8
9
10  AUBRY MCMAHON,

             Plaintiff,

       v.

WORLD VISION, INC.,

             Defendant.

CASE NO. C21-0920JLR

ORDER

## I. INTRODUCTION

Before the court is Plaintiff Aubry McMahon's motion for reconsideration of the court's June 12, 2023 order granting Defendant World Vision, Inc.'s ("World Vision") motion for summary judgment and denying Ms. McMahon's motion for partial summary judgment. (Mot. (Dkt. # 40); Reply (Dkt. # 43); *see* 6/12/23 Order (Dkt. # 38); *see also* Judgment (Dkt. # 39).) World Vision opposes the motion. (Resp. (Dkt. # 42).) The court has considered the motion, the parties' submissions in support of and in opposition

//

to the motion, the relevant portions of the record, and the applicable law. Being fully advised,[1] the court GRANTS Ms. McMahon's motion for reconsideration.

## II. ANALYSIS[2]

In its June 12, 2023 order, the court granted World Vision's motion for summary judgment and denied Ms. McMahon's motion for partial summary judgment, concluding that the Church Autonomy Doctrine, one of the numerous affirmative defenses raised in World Vision's motion, barred Ms. McMahon's claims for sex, sexual orientation, and marital status discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, and the Washington Law Against Discrimination ("WLAD"), RCW 49.60, *et seq.* (*See* 6/12/23 Order at 10-11, 15-26.) In determining whether the Church Autonomy Doctrine barred Ms. McMahon's claims, the court analyzed Ms. McMahon's claims under the burden shifting framework outlined in *Opara v. Yellen*, 57 F. 4th 709 (9th Cir. 2023). (6/12/23 Order at 18-24.) The court agreed with World Vision's argument that the Church Autonomy Doctrine constrains the pretext inquiry in cases involving religious employers and their religious beliefs. (*Id.* at 20-21 (citing *Butler v. St. Stanislaus Kostka Cath. Acad.*, 609 F. Supp. 3d 184, 201-02 (E.D.N.Y. 2022)).) Applying this principle, the court noted that Ms. McMahon appeared to be unable to show that World Vision's decision to rescind her job offer was pretext for a

---

[1] Neither party has requested oral argument (*see* Mot. at 1; Resp. at 1), and the court has determined that oral argument would not be helpful to its disposition of the motion, *see* Local Rules W.D. Wash. LCR 7(b)(4).

[2] The court detailed the factual background of this case in its June 12, 2023 order and does not repeat that background here. (*See* 6/12/23 Order at 2-10.)

ORDER - 2

discriminatory motive without "question[ing] [World Vision's] explanation of religious doctrine" or "question[ing] how much that particular religious doctrine really mattered to [World Vision]." (*Id.* at 24 (quoting *Butler*, 609 F. Supp. 3d at 203-04); *id.* at 8-9, 20 (noting that World Vision rescinded the job offer because Ms. McMahon's same-sex marriage evidenced sexual conduct outside of a Biblical marriage between a man and woman in violation of World Vision's Standards of Conduct ("SOC")).) Accordingly, the court concluded that "because the record before the court does not allow for the resolution of Ms. McMahon's claims on the basis of neutral principles of law, the Church Autonomy Doctrine forecloses judicial inquiry into World Vision's religiously motivated personnel decision." (*Id.* at 24-25.)

Ms. McMahon now moves for reconsideration of the Church Autonomy Doctrine portion of the court's June 12, 2023 order[3] and the June 13, 2023 final judgment entered in favor of World Vision pursuant to Local Rule 7(h)(1) and Federal Rule of Civil Procedure 59(e). (*See generally* Mot.) The court begins by setting forth the standard of review before turning to its analysis of Ms. McMahon's motion for reconsideration.

A.   **Standard of Review**

"Motions for reconsideration are disfavored." Local Rules W.D. Wash. LCR 7(h)(1). Local Rule 7(h)(1) states that the court "will ordinarily deny such motions" unless the moving party shows (1) manifest error in the prior ruling, or (2) new facts or

---

[3] In its June 12, 2023 order, the court also rejected World Vision's argument that the court "lacks jurisdiction to resolve this theological dispute." (6/12/23 Order at 13-14 (quoting WV MSJ (Dkt. # 26) at 11).) Neither party moves for reconsideration of the court's conclusion with respect to the jurisdiction issue.

legal authority which could not have been brought to the attention of the court earlier through reasonable diligence. *Id.*

A party may also move for reconsideration after a judgment has been entered by filing a "motion to alter or amend a judgment" under Federal Rule of Civil Procedure 59(e). Although Rule 59(e) permits a district court to reconsider and amend a previous order and judgment, the rule offers an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000); *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003). In general, a Rule 59(e) motion may be granted if: (1) such motion is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) such motion is necessary to present newly discovered or previously unavailable evidence; (3) such motion is necessary to prevent manifest injustice; or (4) the amendment is justified by an intervening change in controlling law. *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011).

**B.     Ms. McMahon's Motion for Reconsideration**

Ms. McMahon argues that the court manifestly erred by "holding the Church Autonomy Doctrine bars the claims of a non-ministerial employee who was terminated pursuant to a hiring policy that facially discriminates on the basis of sex, sexual orientation, and marital status." (Mot. at 1.) Ms. McMahon contends that the court erred by analyzing this case, which involves an adverse action taken pursuant to a facially discriminatory employment policy, as a pretext case akin to *Butler v. St. Stanislaus Kostka Catholic Academy*, 609 F. Supp. 3d 184 (E.D.N.Y. 2022) and invoking the

1  Church Autonomy Doctrine in light of that pretext analysis. (Reply at 2-4 (referencing
2  facially discriminatory policy cases and explaining why *Opara*'s burden shifting
3  framework and *Butler*'s analysis should not apply in a case such as this).) Ms. McMahon
4  asks the court to reconsider its conclusion that the Church Autonomy Doctrine bars her
5  claims because, she asserts, her claims can be resolved using "neutral principles of law"
6  and do not "call[] into question the reasonableness, validity, or truth of a religious
7  doctrine or practice." (Mot. at 2 (quoting 6/12/23 Order at 16).)

8        With the benefit of additional briefing and further explanation by the parties, the
9  court reverses course and concludes that the Church Autonomy Doctrine does not bar Ms.
10 McMahon's claims. To begin, it is undisputed that World Vision rescinded Ms.
11 McMahon's job offer because it believed that Ms. McMahon's marriage to a woman
12 demonstrated her "inability to comply with [World Vision's] SOC prohibiting sexual
13 conduct outside the Biblical covenant of marriage between a man and a woman."[4]
14 (4/11/23 Wolnowski Decl. (Dkt. # 25) ¶ 13, Ex. 12 ("Talbot Dep. Tr.") at 29:6-9,
15 46:17-20, 48:18-19, 58:8-16, 60:16-20, 65:18-66:10, 67:7-17; *id.* ¶ 14, Ex. 13 ("2/16/23
16 Freiberg Dep. Tr.") at 103:12-21, 105:17-106:5, 108:3-109:16; *see also* 6/12/23 Order at
17 7-10, 19-20 (referencing other testimony regarding the same); *id.* at 4-5, 9 (noting that to
18 be eligible for employment at World Vision, an individual must be willing to affirm and
19 comply with World Vision's SOC).)

---

[4] World Vision's SOC specifically states that employees are prohibited from engaging in "sexual conduct outside the Biblical covenant of marriage between a man and a woman." (Freiberg Decl. (Dkt. # 28) ¶ 40, Ex. MF 18 ("SOC") at WV-000036.)

1    The court agrees with Ms. McMahon's assertion that the policy that served as the
2 basis for World Vision's recission of her job offer, World Vision's Biblical marriage
3 SOC, is facially discriminatory under controlling precedent.[5]  *See, e.g.*, *Int'l Union,*
4 *United Auto., Aerospace & Agr. Implement Workers of Am., UAW v. Johnson Controls,*
5 *Inc.*, 499 U.S. 187, 200 (1991) ("Johnson Controls' policy does not pass the simple test of
6 whether the evidence shows treatment of a person in a manner which but for that person's
7 sex would be different."  (internal quotation marks omitted)); *Bostock v. Clayton Cnty.,*
8 *Ga.*, ___ U.S. ___, 140 S. Ct. 1731, 1741 (2020) ("[I]f changing the employee's sex
9 would have yielded a different choice by the employer—a statutory violation has
10 occurred."); *Frank v. United Airlines, Inc.*, 216 F.3d 845, 853 (9th Cir. 2000) ("An
11 employer's policy amounts to disparate treatment if it treats men and women differently
12 on its face.").  If Ms. McMahon was a man married to a woman, she would not have run
13 afoul of World Vision's Biblical marriage policy and World Vision would not have
14 rescinded her job offer.  Plainly speaking, Ms. McMahon was treated differently because
15 of her sex, sexual orientation, and marital status.  (*See, e.g.*, SOC at WV-000036; Talbot
16 Dep. Tr. at 66:3-67:17, 68:12-69:15; 2/16/23 Freiberg Dep. Tr. at 108:3-109:16;);
17 *Johnson Controls*, 499 U.S. at 199-200 (concluding that defendant's fetal protection
18 policy was not neutral because it barred fertile women, but not fertile men, from working

---

[5] The court's June 12, 2023 order did not address whether World Vision's Biblical marriage SOC is facially discriminatory because it assumed without deciding that Ms. McMahon had established a prima facie case of discrimination. (6/12/23 Order at 19 n.10 (citing Pl. MSJ (Dkt. # 24) at 6-10 (alleging that direct evidence, including World Vision's SOC and Ms. Freiberg and Talbot's deposition testimony, establishes that World Vision rescinded the job offer because Ms. McMahon is in a same-sex marriage)).)

in jobs entailing high levels of lead exposure); *Bostock*, 140 S. Ct. at 1740 ("[A]n employer who intentionally treats an employee worse because of sex—such as by firing the person for actions or attributes it would tolerate in an individual of another sex—discriminates against that person in violation of Title VII.").

The court rejects World Vision's contention that the Biblical marriage SOC is not facially discriminatory because it targets conduct rather than protected traits. (*See* Resp. at 4-5; WV MSJ at 13-14 & n.13; WV MSJ Resp. (Dkt. # 32) at 9-14); *see also Bostock*, 140 S. Ct. at 1744 ("[I]t's irrelevant what an employer might call its discriminatory practice, how others might label it, or what else might motivate it."). If World Vision had an abstinent employees only policy, such a policy would likely be a facially neutral, conduct-based policy. However, World Vision's policy forbids employing anyone who engages in sexual conduct outside of a heterosexual marriage. (*See* SOC at WV-000036.) Whether an employee violates that policy by engaging in sexual conduct depends entirely on the employee's sex, sexual orientation, and marital status.[6] As such, the Biblical marriage SOC is not facially neutral.

Because World Vision rescinded Ms. McMahon's job offer pursuant to a facially discriminatory policy, the court also agrees with Ms. McMahon's contention that it should not have analyzed Ms. McMahon's claims under the burden shifting framework set forth in *Opara*. (*See* Reply at 2; 6/12/23 Order at 18-25.) In *Opara*, the Ninth Circuit described the following three step framework for evaluating Title VII disparate treatment

---

[6] (*See, e.g.*, Pl. MSJ at 6-10 (discussing the same); Pl. MSJ Resp. (Dkt. # 30) at 6-8 (same); Pl. MSJ Reply (Dkt. # 33) at 2-5 (same).)

ORDER - 7

claims at summary judgment: (1) a plaintiff must make out a prima facie case of discrimination using either the relevant *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) factors or by producing "direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated the employer"; (2) "[o]nce a prima facie case [of discrimination] has been made, '[t]he burden . . . shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action'"; and (3) "once an employer articulates some legitimate, nondiscriminatory reason for the challenged action, the employee must show that the articulated reason is pretextual." *Opara*, 57 F.4th at 721-23 (quoting *E.E.O.C. v. Boeing Co.*, 577 F.3d 1044, 1049 (9th Cir. 2009)).

The Ninth Circuit stated that this burden shifting framework applies regardless of whether the plaintiff establishes a prima facie case using direct or circumstantial evidence of discrimination or the *McDonnell Douglas* factors. *Id.* at 721-24. However, the direct evidence at issue in *Opara* was not a facially discriminatory policy and *Opara* did not expressly disturb binding precedent exempting claims involving a facially discriminatory policy from burden-shifting. *See generally id.*; *see, e.g.*, *Johnson Controls*, 499 U.S. at 200; *Frank*, 216 F.3d at 853-55. For example, in *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., UAW v. Johnson Controls, Inc.*, defendant Johnson Controls had a policy that barred fertile women, but not fertile men, from jobs entailing high levels of lead exposure. 499 U.S. at 191-92, 197-98. The Supreme Court concluded that Johnson Controls' use of such a policy constituted disparate treatment through facial discrimination: "Johnson Controls' policy is not neutral because it does not apply to the

reproductive capacity of the company's male employees in the same way as it applies to that of the females." *Id.* at 199-200. The Supreme Court made clear that such an "explicit gender-based policy is sex discrimination under § 703(a) [of Title VII] and thus may be defended only as a BFOQ." *Id.* at 200.

The Ninth Circuit applied this principle in *Frank v. United Airlines, Inc.*, which involved defendant United Airlines' policy that "required female flight attendants to weigh between 14 and 25 pounds less than their male colleagues of the same height and age." *Frank*, 216 F.3d at 848, 854. The Ninth Circuit held that the plaintiffs were not required to establish pretext or otherwise establish the presence of discriminatory intent because "[w]here a claim of discriminatory treatment is based upon a policy which on its face applies less favorably to one gender," the employer's use of the policy is per se intentional discrimination. *Id.* at 854 (quoting *Gerdom v. Continental Airlines*, 692 F.2d 602, 608 (9th Cir. 1982)) (citing *Healey v. Southwood Psychiatric Hosp.*, 78 F.3d 128 (3d Cir. 1996)). The Ninth Circuit went on to conclude that the only way United Airlines could defend its discriminatory weight policy was to show that "the difference in treatment between female and male flight attendants is justified as a BFOQ." *Id.* at 855 (citing *Johnson Controls*, 499 U.S. at 199-200).[7] Accordingly, with the benefit of the parties' additional briefing on this point, the court is now persuaded that binding precedent prohibits the court from analyzing Ms. McMahon's claims under the burden-

---

[7] *See also, e.g.*, *Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1048-50 (9th Cir. 2007) (concluding that the *McDonnell Douglas* burden shifting framework is inapplicable to Fair Housing Act discrimination claims involving a facially discriminatory policy and that such claims should instead be analyzed under the *Johnson Controls* approach).

shifting framework given that her claims of discriminatory treatment are based upon World Vision's facially discriminatory Biblical marriage SOC.

As both parties appear to recognize, the court's conclusion that the Church Autonomy Doctrine precludes review of Ms. McMahon's claims was premised on its application of a burden shifting framework to Ms. McMahon's claims and its analysis of the pretext element of that framework. (*See generally* Mot.; Resp.; Reply; 6/12/23 Order at 18-25.) Because the court now agrees with Ms. McMahon that the burden-shifting framework is inapplicable in this case (*see supra*), the court must now determine whether the Church Autonomy Doctrine still bars Ms. McMahon's claims.

The Church Autonomy Doctrine does not preclude courts from resolving disputes involving religious parties if such disputes are capable of being resolved on the basis of "neutral principles of law"—i.e., the court can "resolve the dispute without resolving underlying controversies over religious doctrine or calling into question the reasonableness, validity, or truth of a religious doctrine or practice." (6/12/23 Order at 16 (quoting *Puri v. Khalsa*, 844 F.3d 1152, 1166 (9th Cir. 2017)).) "Whether an employment practice involves disparate treatment through explicit facial discrimination does not depend on why the employer discriminates but rather on the explicit terms of the discrimination." *Johnson Controls*, 499 U.S. at 199. Accordingly, the court need not "question the reasonableness, validity, or truth of" World Vision's religious beliefs or doctrines to conclude that World Vision's rescission of Ms. McMahon's job offer pursuant to its Biblical marriage SOC, a facially discriminatory policy (*see supra*), constitutes unlawful sex, sexual orientation, and marital status discrimination. Thus,

because Ms. McMahon can establish unlawful discrimination using neutral principles of law, the Church Autonomy Doctrine does not preclude review of her claims.

In sum, the court GRANTS Ms. McMahon's motion for reconsideration and VACATES the final judgment entered in favor of World Vision and the portion of the court's June 12, 2023 order in which it concluded that the Church Autonomy Doctrine bars Ms. McMahon's claims, granted World Vision's motion for summary judgment, and denied Ms. McMahon's motion for partial summary judgment (6/12/23 Order at 18-26). The remaining portions of the June 12, 2023 order are not affected by this order.

The court must now determine whether Ms. McMahon's claims are barred by World Vision's remaining affirmative defenses. In light of the court's rejection of World Vision's jurisdictional and Church Autonomy Doctrine defenses (*see* 6/12/23 Order at 13-14; *supra* § III), the court concludes that the parties should have an opportunity to re-brief their cross-motions for summary judgment before the court analyzes World Vision's remaining affirmative defenses. This will allow the parties to dedicate more space to their discussions of the remaining defenses and will afford them an opportunity to address what impact, if any, the Supreme Court's recent decision in *303 Creative LLC v. Elenis*, __ U.S. __, 143 S. Ct. 2298 (2023) has on such defenses.

### III.   CONCLUSION

For the foregoing reasons, the court GRANTS Ms. McMahon's motion for reconsideration (Dkt. # 40). The court VACATES (1) the final judgment entered on June 13, 2023 (Dkt. #39) and (2) the portion of the June 12, 2023 order in which the court concluded that the Church Autonomy Doctrine bars Ms. McMahon's claims, granted

World Vision's motion for summary judgment, and denied Ms. McMahon's motion for partial summary judgment (Dkt. # 38 at 18-26). The remaining portions of the court's June 12, 2023 order remain in effect.

The court ORDERS the parties to meet and confer and submit, by no later than **July 31, 2023**, a joint statement setting forth a proposed briefing schedule for their renewed cross-motions for summary judgment regarding World Vision's affirmative defenses. The court will enter a new trial schedule, if appropriate, after it rules on the parties' renewed cross-motions for summary judgment.

Dated this 24th day of July, 2023.

JAMES L. ROBART
United States District Judge