**THE HONORABLE JAMES L. ROBART**

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| AUBRY MCMAHON,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>WORLD VISION, INC.,<br><br>　　　　Defendant. | Case No.: 2:21-cv-00920-JLR<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF HER RENEWED MOTION FOR SUMMARY JUDGMENT ON AFFIRMATIVE DEFENSES**<br><br>**NOTE ON MOTION CALENDAR: OCTOBER 20, 2023** |

A ruling in favor of Defendant World Vision on any of its affirmative defenses (other than BFOQ) would give it free reign to discriminate on any basis it chooses with respect to every job in the company. While Defendant would like that to be the law, it isn't. Under existing law, Plaintiff Aubry McMahon is entitled to summary judgment on every one of the affirmative defenses at issue:

(1) World Vision's Title VII religious employer defense fails because Plaintiff has not brought claims for religious discrimination.

(2) World Vision's WLAD religious employer and First Amendment ministerial exception defenses fail because the Customer Service Representative position for which Plaintiff was hired was an administrative support worker not a minister.

(3) Not being in a same-sex marriage is not a BFOQ under either Title VII or the WLAD.

**PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT -** 1
2:21-CV-00920-JLR

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798
(206) 682-6711

(4) Defendant's Free Exercise affirmative defense fails because Title VII and the WLAD are generally applicable laws that treat religion neutrally, if not favorably.

(5) Neither Title VII nor the WLAD violates Defendant's right to expressive association because any incidental impact on that right is more than justified by the state's compelling interest in preventing employment discrimination; and

(6) Defendant's compliance with Title VII and the WLAD will not require it to engage in any compelled speech.

## I.   TITLE VII'S RELIGOUS EMPLOYER EXEMPTION DOES NOT APPLY

World Vision continues to play fast and loose with legal precedent by insisting that Title VII's religious employer exemption bars Plaintiff's sex discrimination claim. Neither *Garcia v. Salvation Army*, 918 F.3d 997, 1004, 1006 (9th Cir. 2019), nor any other federal appellate decision suggests that the Title VII religious employer exemption applies to anything other than religious discrimination claims. Plaintiff is entitled summary judgment on this affirmative defense.

## II.   PLAINTIFF WOULD NOT HAVE BEEN A MINISTER

### A. Defendant's Arguments that Customer Service Representatives are Ministers Would Make All World Vision Employees Ministers

The parties largely agree on the general legal counters of the First Amendment ministerial exception,[1] although they significantly disagree about its application to this case. World Vision concedes that the ministerial exception only covers "a subset of employees" and applies only to "employees with vital religious duties." Dkt. No. 58 at 8-9 (internal punctuation omitted). Defendant then argues that as Customer Service Representatives constitute less than 10% of World Vision's total workforce, every one of its five or six dozen Customer Service Representatives qualifies for the ministerial exception because they perform religious duties. *Id.* Defendant's argument is fatally flawed. All the reasons World Vision claims that Customer Service Representatives qualify for the

---

[1] But not entirely. Defendant's assertion that "ministerial duties" are defined by the employers' religious expectations for a particular role, Dkt. No. 58 at 6, is contrary to law. *Cf.* Dkt. No. 52 at 4-5; Dkt. No. 56 at 3-4.

**PLAINTIFF'S REPLY IN SUPPORT OF<br>
MOTION FOR SUMMARY JUDGMENT -** 2<br>
2:21-CV-00920-JLR

FRANK FREED<br>
SUBIT & THOMAS LLP<br>
Suite 1200 Hoge Building, 705 Second Avenue<br>
Seattle, Washington 98104-1798<br>
(206) 682-6711

1  ministerial exception apply equally to every other World Vision employee. See Dkt. No. 52 at 10-
2  13; Dkt. No. 56 at 8-11.

3        For present purposes, Plaintiff will assume that, contrary to Melanie Freiberg's original
4  deposition testimony, Dkt. No. 25-13 at 22:15-19, Customer Service Representatives lead devotions.
5  Dkt. No. 58 at 14-16. "Leadership of Devotions" is "part of every [World Vision] job description,"
6  and is rotated among the staff. Dkt. No. 28-31 at 23. Accordingly, leadership of devotions is not a
7  religious responsibility of only a "subset" of World Vision employees. Although some Customer
8  Service Representatives lead chapels, Dkt. No. 58 at 13-15, leading chapel is *not* even "an
9  expectation" of the Customer Service Representative position. Dkt. No. 25-13 at 22:20-23. Whether
10 a Customer Service Representative chooses to lead chapels depends entirely on their own "interest
11 and desire to lead." *Id.* at 22:23. Defendant does not claim Customer Service Representatives play a
12 greater role in leading chapels than other World Vision employees. It is undisputed that the role of
13 Customer Service Representatives with respect to the leadership of both devotions and chapels is
14 the same as every other World Vision employee. Thus, neither is a religious responsibility applicable
15 only to the Customer Service Representative "subset" of Defendant's workforce.

16       Defendant admits that the only "unique, important, vital, key role of" Customer Service
17 Representatives is to interact with "supporters and potential supporters." Dkt. No. 58 at 14. No one
18 disputes that Customer Service Representatives interact with donors and potential donors and that
19 other World Vision employees do not have this job function. Defendant repeatedly touts that,
20 according to its Donor Contact Services ("DCS") polices, "[b]eing part of DCS means you are the
21 **Voice**, **Face**, and **Heart** of World Vision." Dkt. No. 58 at 1, 9, 12, 17, 38. About 25% of DCS staff
22 do not make any inbound and outbound calls. Dkt. No. 29 at ¶¶ 4-5. Thus, World Vision considers
23 DCS staff who do not make calls to or receive calls from donors to be just as much "the **Voice**, **Face**,
24 and **Heart** of World Vision" as Customer Service Representatives. Accordingly, making and
25 receiving donor phone calls does not make Customer Service Representatives ministers.
26

**PLAINTIFF'S REPLY IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT -** 3
2:21-CV-00920-JLR

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798
(206) 682-6711

Defendant's assertion that Customer Service Representatives "constitute a small subset of WV staff entrusted with voicing and personifying its Christian mission, vision, and strategies," Dkt. No. 58 at 16, is also contrary to World Vision's own documents. All World Vision employees have a "call to ministry." Dkt. No. 29-4 at 7. "All World Vision staff…are responsible for…communicating World Vision's Christian faith and witness…accurately and with integrity…." Dkt. No. 28 at ¶ 26 & Dkt. No. 29 at ¶ 12 (internal punctuation omitted). "[A]ll staff represent World Vision and, more importantly, the Gospel of Jesus Christ, in their work…." Dkt. No. 28-15 at 2. The only distinction is that Customer Service Representatives do so in donor phone calls and other World Vision employees don't. But that is a distinction without a difference for purposes of the ministerial exception. *Id.* at 10-11.

Thus, Defendant is left with the argument that Customer Service Representatives are uniquely ministers among all of World Vision's employees because only Customer Service Representatives pray with donors. Dtk. No. 58 at 16-17. That argument is unavailing. Defendant agrees with Plaintiff that the Court should determine whether the Customer Service Representative position qualifies for the ministerial exception by examining the "essential functions" of the job. Dkt. No. 58 at 11, 12. A job's "'essential functions' are [the] fundamental job duties of the employment position…." *Bates v. UPS, Inc.*, 511 F.3d 974, 990 (9th Cir. 2007) (internal punctuation omitted). "Essential functions" contrast with the "marginal functions of the position." *Id.* The undisputed evidence establishes that praying with donors was an optional, marginal function of the Customer Service Representative job. It was not mandatory or required. Dkt. No. 25-10 at 24:9-11; 25:4, 10-12; 30:21-22. Defendant agrees the Customer Service Representative job description "encourages but does not mandate" prayer with donors. Dkt. No. 58 at 16. Defendant does not dispute that it would have been up to Plaintiff whether to pray with donors and that World Vision would not have disciplined her if she chose not to do so. Dkt. No. 25-10 at 30:21-23.

None of the cases Defendant cites suggests that an employer can prove that a particular position qualifies for the ministerial exception by relying upon purely optional religious functions.

PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT - 4
2:21-CV-00920-JLR

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798
(206) 682-6711

Dkt. No. 58 at 7-8. Neither *Hosanna-Tabor Evangelical Lutheran Church & School v. EEOC*, 565 U.S. 171 (2012), nor *Our Lady of Guadalupe School v. Morrissey-Berru*, 140 S. Ct. 2049 (2020), considered optional religious functions in concluding the teachers in those cases were ministers. In the latter, all the employer "expectations" upon which the majority relied were requirements set forth in Morrisey-Berru's written employment agreement. 140 S. Ct. at 2056-57.

*Starkey v. Roman Catholic Archdiocese of Indianapolis, Inc.*, 41 F.4th 931, 941 (7th Cir. 2022), looked to the employer-mandated "job duties and responsibilities" of the position. The court rejected Starkey's argument that she did not qualify as a minister because she failed to perform some of the religious requirements of her position: "Under Starkey's theory, an individual placed in a ministerial role could immunize themself from the ministerial exception by failing to perform certain job responsibilities…But an employee is still a minister if she fails to adequately perform the religious duties she was hired and entrusted to do." *Id.* Likewise, *Fitzgerald v. Roncalli High School, Inc.*, examined the mandatory religious duties of the same Director of Guidance position and the religious duties the plaintiff claimed that she had performed. 73 F.4th 529, 533-34 (7th Cir. 2023). None were optional. In *Butler v. St. Stanislaus Kostka Catholic Academy*, the court focused on what the plaintiff was "obligated" to do, *i.e.*, "the specific ministerial duties that it is undisputed that [the plaintiff] *would have performed*." 609 F. Supp. 3d 184, 194-96 (E.D.N.Y. 2022) (emphasis supplied). There is no legal support for Defendant's contention that optional religious job functions can make an otherwise non-ministerial position ministerial.

In any event, World Vision's contention that Customer Service Representatives are *uniquely* ministerial employees because they may pray on the job directly contradicts its prior assertion that *all* World Vision employees are ministers because they must pray on the job. Dkt. No. 26 at 25. Defendant emphasized "the core element of *prayer*" in asserting that all World Vision employees are ministers because they all perform "important religious functions." *Id.* An employee does not qualify for the ministerial exception "simply because she believes in God, prays at work, and is employed by a religious entity." *Palmer v. Liberty Univ.*, 72 F.4th 52, 75 (4th Cir. 2023) (Motz,

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT -** 5
2:21-CV-00920-JLR

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798
(206) 682-6711

J., concurring). If the option to pray on the job with donors who are not necessarily co-religionists makes Customer Service Representatives ministers, then surely Defendant's requirement that all World Vision staff pray at work with their co-religionists, Dkt. No. 28 at ¶ 26 & Dkt. No. 29 at ¶ 15, makes all World Vision employees ministers.

Defendant's arguments have no logical stopping point. If this Court were to rule that the limited religious duties of Customer Service Representatives put them within the ministerial exception, the inevitable consequence of that ruling would be that all World Vision employees will lose the protections of the laws against employment discrimination. Such a ruling would countermand the Supreme Court's directive that the ministerial exception applies only to those employees "holding certain important positions with churches or other religious institutions," *Our Lady of Guadalupe*, 140 S. Ct. at 2060, and who have "a role distinct from that of most…members." *Hosanna-Tabor*, 565 U.S. at 191.

### B. Precedent Compels the Conclusion that the Customer Service Representative Position is "at Bottom" Secular

Defendant does not dispute the "main duty" of Customer Service Representatives is to "acquire and maintain donor relationships through the basic inbound and outbound calls." Dkt. No. 58 at 12. Defendant does not contest that 11 out of the 13 enumerated job duties of the Customer Service Representative position for which Plaintiff was hired in January 2021 are entirely secular.[2] See Dkt. No. 25-1 at 3. Defendant does not deny that the experience and skills that it advertised as necessary for the Customer Service Representative position are those appropriate to a call-center administrative support worker. *Id.* at 1, 4.

Defendant makes only a weak effort to distinguish *Ratliff v. Wycliffe Assocs., Inc.*, Case No. 6:22-cv-1185-PGB-RMN, 2023 WL 3688082 (M.D. Fla. May 26, 2023). Dkt. No. 58 at 20. There the court rejected the employer's argument that the plaintiff, who had the title of Software Developer II, qualified under the ministerial exception because (1) his job description required him

---

[2] Defendant now claims to place "little weight" on the March 2022 Customer Service Representative job description, Dkt. No. 58 at 13, which differs in significant respects from the one for the position to which Plaintiff applied. The Court should place little weight on it as well.

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT -** 6
2:21-CV-00920-JLR

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798
(206) 682-6711

to have "a personal relationship with Jesus Christ" and sense "a call from God to ministry" and (2) his job duties were "essential to Defendant's central mission to share the Christian faith with unreached people groups around the world." *Id.* at *5 n. 8 & 6. Defendant here makes nearly identical arguments as the defendant in *Ratcliff*. Because McMahon also had no "idiosyncratic religious title, background, education, or function," this Court should likewise hold that her accepting a job as a World Vision Customer Service Representative was "a far cry from accepting a job akin to a minister." *Id.* at *5, *6.

There is literally no record support for Defendant's contention that "a Donor Services Representative in an explicitly Christian charity *like WV* conveys at least as much religious content as a lay teacher in a Christian school." Dkt. No. 58 at 10 (emphasis supplied). Defendant's contention also contravenes the unique nature of religious education that the Supreme Court recognized in *Our Lady of Guadulupe*, 140 S. Ct. at 2064-66. "[E]ducating young people in their faith, inculcating its teachings, and training them to live their faith are responsibilities that lie at the very core of the mission of a private religious school." *Id.* at 2064. For that reason, courts take a broad view of the ministerial exception in the context of religious education. See Dkt. No. 52 at 15-16. However, even "Christian teachers" do not necessary qualify for the exception.

In *Palmer v. Liberty Univ.*, Case No. 6:20-cv-31, 2021 WL 6201273, *22 (W.D. Va. Dec. 1, 2021), *vacated and appeal dismissed*, 72 F.4th 52 (4th Cir. 2023), the district court found that an art professor for a Christian university fell outside the ministerial exception even though she was a "Christian teacher" who performed some religious functions. On appeal, the Fourth Circuit did not formally reach the ministerial exception issue, though there was a lively discussion among the panel. Judge Motz agreed with the district court that the ministerial exception did not apply to Palmer. 72 F.4th at 74. Judge Richardson's suggestion to the contrary was "no mere application of existing precedent. It is a dramatic broadening of the ministerial exception that would swallow the rule." *Id.* (Motz, J., concurring).[3] The same is true of World Vision's arguments here.

---

[3] Although Judge King did not join Judge Motz's concurrence, his majority opinion (joined by Judge Motz) dismissed Judge Richardson's opinion as "unnecessary" and "not authoritative". 72 F.4th at 68 n.8.

**PLAINTIFF'S REPLY IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT -** 7
2:21-CV-00920-JLR

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798
(206) 682-6711

Defendant would have this Court reject the unanimous decision in *DeWeese-Boyd v. Gordon College*, 487 Mass. 31, 63 N.E.3d 1000 (2021), *cert. denied*, 142 S. Ct. 942 (2022), because *four* United Supreme Court Justices criticized the opinion's "understanding of religious education." *Compare* Dkt. No. 58 at 20 *with* Dkt. No. 52 at 17 n.2. Four Justices does not a majority make. *Cf.* Dkt. No. 58 at 20. Moreover, those four Supreme Court Justices took no issue with *De Weese-Boyd*'s general discussion of the ministerial exception including, but not limited to, its determination that "having a call to minister to others" and "the integration of religious faith and belief with daily life and work" do not trigger the exception. 487 N.E. at 48, 54. *DeWeese-Boyd* remains persuasive authority regarding the profound jurisprudential and workplace consequences of the overly broad interpretation of the ministerial exception to the laws against employment discrimination for which Defendant advocates. *See Palmer*, 72 F.4th at 74-75 (Motz, J., concurring) (citing *DeWeese-Boyd*).

Defendant is correct that Plaintiff's motion for summary judgment did not cite *Alicea-Hernandez v. Catholic Bishop of Chicago*, 320 F.3d 698 (7th Cir. 2003), Dkt. No. 58 at 20-21, or any other ministerial exception case decided before *Hosanna-Tabor* and *Our Lady of Guadalupe*. But as Plaintiff explained in her opposition to Defendant's motion, *Alicea-Hernandez* provides a persuasive counterexample showing why the ministerial exception does not apply here. Dkt. No. 56 at 13-15. *Alicea-Hernandez* ruled that the plaintiff there "served a ministerial function" because her "unique responsibilities at the Church" in the position of Hispanic Communications Manager/press secretary included "conveying the message of [the] organization to *the public as whole*." 320 F.3d at 700, 704 (emphasis added). By contrast, in January 2021 Defendant employed approximately 60 Customer Service Representatives, Dkt. No. 29 at ¶ 5, all of whom had the same duties. Defendant's assertion that because Customer Service Representatives *collectively* interact with the public at large, they perform "more vital" religious functions than Alicea-Hernandez did, Dkt. No. 58 at 21, turns the Seventh Circuit's reasoning on its head. Defendant's argument also leads to every worker who interacts with the public for a religious organization being a minister.

**PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT -** 8
2:21-CV-00920-JLR

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798
(206) 682-6711

The parties agree that "all facts relevant to" the ministerial exception are undisputed. Dkt. No. 58 at 21. Plaintiff is entitled to summary judgment on that affirmative defense.

### III.  NONE OF WORLD VISION'S OTHER DEFENSES ARE MERITORIOUS

Defendant claims that Plaintiff "disregards" *Braidwood Mgt. Inc., v. EEOC,* 70 F.4th 914 (5th Cir. 2023), Dkt. No. 58 at 23, but it is World Vision that does so. *Braidwood* held that *Bostock v. Clayton Cty*, 140 S. Ct. 1731 (2020), gives religious employers "*three* potential avenues of legal recourse...to shield themselves from any potential infringement of their religious rights" by Title VII suits alleging sexual orientation discrimination. 70 F.4th at 918 (emphasis added). Defendant has unsuccessfully pursued two of those avenues, the religious employer exemption and the ministerial exception. The third, the RFRA, is not before the Court.

No court has accepted Defendant's BFOQ, Free Exercise, Expressive Association, or Free Speech affirmative defenses in the context of a private plaintiff discrimination action. Defendant speciously argues that the three and a half years since *Bostock* are not enough time for these issues to have arisen. Dkt. No. 58 at 22. But they have. *See Billard v. Charlotte Catholic High School*, No. 3:17-cv-00011, 2021 WL 4037431, at *22-24 (W.D.N.C. Sept. 3, 2021), *appeal filed* (Apr. 25, 2022) (rejecting expressive association defense to Title VII claim); *Starkey v. Roman Catholic Archdiocese of Indianapolis*, 496 F. Supp. 3d 1195, 1208 (S.D. Ind. 2020) (same).[4]

Defendant cites a litany of First Amendment cases on page 22 of its opposition. None of them supports the proposition that employers have a First Amendment defense other than the ministerial exception to a private plaintiff discrimination action. World Vision seeks to immunize itself and other employers from statutory liability for facially discriminatory employment practices based on their religious or philosophical objection to equal treatment in the workplace in accordance

---

[4] Defendant predicts that the Fourth Circuit will hold that Billard qualifies for the ministerial exemption. Dkt. No. 28 at 34. If so, such a ruling would not undermine the district court's rejection of the employer's expressive association defense. Similarly, *Starkey* did not "abandon" its expressive association holding in subsequently ruling that the ministerial exception barred the plaintiff's claims. *Starkey v. Roman Catholic Archdiocese of Indianapolis, Inc.*, 553 F. Supp. 3d 616 (S.D. Ind. 2021), *aff'd*, 41 F.4th 931 (7th Cir. 2022).

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT -** 9
2:21-CV-00920-JLR

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798
(206) 682-6711

with federal and state law. This Court should reject World Vision's BFOQ defenses and all its First Amendment challenges to Title VII and the WLAD.[5]

### A. Plaintiff is Entitled to Summary Judgment on the BFOQ Defenses

Defendant ignores governing United States Supreme Court and Ninth Circuit law setting the high hurdles it must surmount to survive summary judgment on its Title VII BFOQ defense. Dkt. No. 52 at 20-21. Defendant's opposition to Plaintiff's motion for summary judgment makes the same erroneous contentions as its affirmative summary judgment motion with respect to the relevant BFOQ. The applicable BFOQ is "not being in a same-sex marriage." Dkt. No. 56 at 17-18. Defendant again improperly attempts to bolster its BFOQ defense by relying on "information" it claims to have learned at Plaintiff's deposition, which occurred more than two years after Defendant rescinded her job offer. See Dkt. No. 56 at 15-17. An employer cannot be "motivated by knowledge it did not have" when it took the adverse action. *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 360 (1995). Plaintiff is entitled to summary judgment on Defendant's Title VII BFOQ defense.

Washington Supreme Court precedent makes it abundantly clear that the WLAD BFOQ defense is even stricter than Title VII's. To establish a BFOQ under Washington law, the employer must show that "excluding members of a particular protected status group is essential to the purposes of the job." *Hegwine v. Longview Fibre Co.*, 162 Wn.2d 340, 358, 172 P.3d 688 (2007) (internal punctuation omitted). This in turn requires proof that (1) "all or substantially all persons in the excluded class would be unable to efficiently perform the duties of the position at issue," and (2) "the essence of the operation would be undermined by hiring anyone in that excluded class." *Id.* (internal punctuation omitted). Plaintiff is therefore also entitled to summary judgment on World Vision's WLAD BFOQ defense.

---

[5] Defendant incorrectly claims certification under 28 U.S.C. § 2403 is not necessary because World Vision seeks a constitutional exemption from Title VII and the WLAD only "for itself." Dkt. No. 58-23. Defendant's Free Exercise challenge would provide a blanket exemption to every religious employer. Certification under 28 U.S.C. § 2403 is required when a challenge "draws into the question the constitutionality" of a statute. *Peruta v. County of San Diego*, 771 F.3d 570, 575 (9th Cir. 2014) (internal quotation omitted), *rev'd on other grounds*, 824 F.3d 919 (9th Cir. 2016) (en banc). However, because U.S. Supreme Court, Ninth Circuit, and Washington Supreme Court precedent all preclude Defendant's First Amendment challenges to Title VII and the WLAD, this Court can reject them without going through the 28 U.S.C. § 2403 certification process.

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT -** 10
2:21-CV-00920-JLR

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798
(206) 682-6711

**B. There is No Free Exercise Defense to a Title VII Violation**

Defendant refuses to acknowledge that "there is no general constitutional immunity, over and above the ministerial exception, that can protect a religious institution from the law's operation." *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2397 n.1 (2020) (Kagan, J., concurring in the judgment).

Defendant urges this Court to disregard *EEOC v. Fremont Christian School*, 781 F.2d 1362, 1368-69 (9th Cir. 1986), which held that Title VII passes strict scrutiny under the First Amendment. Dkt. No. 58 at 26. Without any supporting authority, Defendant asserts that *Fremont* was "overtaken" by *Tandon v. Newson*, 141 S. Ct. 1294 (2021) (per curiam), *Fulton v. City of Philadelphia*, 141 S. Ct. 1868 (2021), and *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407 (2022). Dkt. No. 58 at 26. Collectively those cases hold that where a government policy is not neutral towards religion or generally applicable, the policy must meet strict scrutiny. *Tandon*, 141 S. Ct. at 1296; *Fulton*, 141 S. Ct. at 1877; *Kennedy*, 142 S. Ct. at 2421-22. Even if Title VII and the WLAD were not both generally applicable and at least neutral towards religion (and they are), all that would mean is that strict scrutiny applies. *Fremont* holds that Title VII meets strict scrutiny and its reasoning is equally applicable to the WLAD. Contrary to what Defendant suggests, Dkt. No. 58 at 29, *Tandon*, *Fulton*, and *Kennedy* did not change the legal test for whether a statute passes strict scrutiny. This Court is not free to disregard *Fremont*.[6]

But strict scrutiny does not apply here. "[F]ree exercise claims must fail" where, as here, "'prohibiting the exercise of religion...is not the *object* of the law but merely the incidental effect of a generally applicable and otherwise valid provision....'" *American Friends Service Committee Corp. v. Thornburgh*, 951 F.2d 957, 960 (9th Cir. 1991) (quoting *Employment Division, Dep't of Human Resources v. Smith*, 494 U.S. 872, 878 (1990)). Plaintiff has already refuted Defendant's argument that Title VII and the WLAD are not "generally applicable" within the meaning of *Fulton*

---

[6] To the degree there is tension between *Fremont*'s holding that Title VII satisfies strict scrutiny under the First Amendment and *Braidwood*'s contrary ruling in the context of a RFRA claim, 70 F.4th at 939-40, this Court must follow Ninth rather than Fifth Circuit law.

**PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT -** 11
2:21-CV-00920-JLR

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798
(206) 682-6711

and *Fellowship of Christian Athletes v. San Jose Unified School Dist. Bd. of Ed.*, 82 F.4th 664 (9th Cir. 2023) (en banc). Dkt. No. 52 at 24; Dkt. No. 56 at 19-21.

Defendant erroneously claims that Title VII and the WLAD are not neutral towards religion because those statutes exempt small employers but do not exempt employers with religious objections to same-sex marriage. Dkt. No. 58 at 28-29. Defendant's argument is the epitome of a *non-sequitur*. *Tandon* holds that government regulations are not neutral with respect to religion "whenever they treat *any* comparable secular activity more favorably than religious exercise." 141 S. Ct. at 1294. Having fewer than 15 or eight employees is not a "secular activity" and is not comparable for First Amendment purposes to having a religious objection to same-sex marriage. If Title VII and the WLAD exempted only secular small employers but not small religious ones, then those statutes would not be neutral to religion.

The truth of the matter is that Title VII and the WLAD treat religious exercise more favorably than comparable secular activity. Both statutes have an exemption for religious employers. 42 U.S.C. § 2000e-1(a); *Woods v. Seattle's Union Gospel Mission*, 197 Wn.2d 231, 250, 481 P.3d 1060 (2021), *cert. denied*, 142 S. Ct. 1094 (2022). Both statutes require accommodation of practices grounded in religious but not secular or political beliefs. *See Doe v. San Diego Unified School Dist.*, 19 F.4th 1173, 1180 (9th Cir. 2021); *Kumar v. Gate Gourmet Inc.*, 180 Wn.2d 481, 496, 325 P.3d 193 (2014) (adopting Title VII religious accommodation law). There are *no* instances where the statutes give greater protection to secular practices than comparable religious ones.

Title VII and the WLAD are both generally applicable and at least neutral with respect to religion. Therefore, rational basis review applies. Both statutes are "rationally related to a legitimate governmental purpose." *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1084 (9th Cir. 2015). RCW 49.60 is a "neutral, generally applicable law subject to rational basis review." *State v. Arlene's Flowers, Inc.*, 193 Wn.2d 469, 523, 441 P.3d 1203 (2019), *cert. denied*, 141 S. Ct. 2884 (2021). "And the WLAD clearly meets that standard." *Id.* Plaintiff is entitled to summary judgment on World Vision's free exercise affirmative defense.

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT -** 12
2:21-CV-00920-JLR

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798
(206) 682-6711

**C. Plaintiff is Entitled to Summary Judgment on Expressive Association**

In *Hishon v. King & Spalding*, 467 U.S. 69, 78 (1984), the United States Supreme Court "rejected the argument that Title VII infringed employers' First Amendment rights." *Wisconsin v. Mitchell*, 508 U.S. 476, 487 (1993). Defendant's summary judgment opposition ignores *Mitchell*, but this Court cannot. Not even *Bear Creek Bible Church v. EEOC*, 571 F. Supp. 3d 571, 616 (N.D. Tex. 2021), *aff'd in part, vacated in part, and reversed in part*, *sub nom Braidwood Mgt. Inc. v. EEOC*, 70 F.4th 914 (5th Cir. 2023), suggested that *Hishon* has been "overtaken by decades of precedent." *Cf.* Dkt. No. 58 at 33. *Bear Creek Church*'s refusal to find that *Hishon* forecloses an expressive association defense in a Title VII action cannot be squared with *Mitchell*. The Fifth Circuit did not affirm *Bear Creek Church*'s expressive association rulings. Dkt. No. at 58 at 23. Indeed, *Briarwood* did not number expressive association among the affirmative defenses available to an employer in a Title VII sexual orientation discrimination suit. 70 F.4th at 918.

Defendant's assertion that Title VII and WLAD constitute "content and viewpoint discrimination," Dkt. No. 58 at 32, directly conflicts with the Supreme Court's holding in *Mitchell* that Title VII is "a permissible content-neutral regulation of conduct," 508 U.S. at 487.

Plaintiff did not mention *Slattery v. Hochul*, 61 F.4th 278 (2d Cir. 2023), in her renewed motion for summary judgment because that case does not involve Title VII or a state fair employment practices law analogous to Title VII and the WLAD. Perhaps for this very reason, *Slattery* failed to cite or consider either *Hishon* or *Mitchell*. *Slattery*'s failure to do so undermines the applicability of its analysis to this case, not as Defendant suggests, the authoritativeness of those Supreme Court precedents. Dkt. No. 58 at 33. Plaintiff has already discussed *Slattery* in detail. Dkt. No. 56 at 25-27. For many reasons, Defendant is incorrect that the "only real difference between" *Slattery* and this case is that "the protected trait in *Slattery* was reproductive rights, not sexual orientation." Dkt. No. 58 at 23. Plus, that *Slattery* involved abortion and this case involves (1) a federal law enacted to enforce the Fourteenth Amendment guarantee of equal protection and (2) the

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT -** 13
2:21-CV-00920-JLR

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798
(206) 682-6711

fundamental right to engage in same-sex marriage is a distinction of constitutional magnitude. Dkt. No. 56 at 27.

Even if this Court were to disagree with Plaintiff that *Mitchell* and *Hishon* foreclose World Vision's expressive association defense, Defendant has not shown that compliance with Title VII and the WLAD would impose a "serious" or "severe" burden on its right to expressive association. *See Roberts v. U.S. Jaycees*, 468 U.S. 609, 626 (1984); *Slattery*, 61 F.4th at 287; Dkt. No. 56 at 24-25. That alone distinguishes this case from both *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648, 653 (2000), and *Slattery*, 61 F.4th at 288. Just like in *Billard v. Charlotte Catholic High School*, No. 3:17-cv-00011, 2021 WL 4037431, at *24 (W.D.N.C. Sept. 3, 2021), *appeal filed* (Apr. 25, 2022), World Vision has shown at most an incidental burden. An incidental burden on expressive association does not trigger strict scrutiny. *Slattery*, 61 F.4th at 287. As in *Hishon*, the strong public interest in preventing invidious workplace discrimination outweighs any burden on World Vision's right to expressive association. *Accord Billard*, 2021 WL 4037431, at *24; *Starkey v. Roman Catholic Archdiocese of Indianapolis*, 496 F. Supp. 3d 1195, 1208 (S.D. Ind. 2020).

The Court should grant summary judgment to McMahon on World Vision's expressive association defense.

### D. Complying with Employment Discrimination Laws is Not Compelled Speech

Defendant attempts to distinguish the holding of *Pittsburgh Press Co. v. Pittsburgh Commission on Human Relations*, 413 U.S. 376 (1973), that the First Amendment does not provide a free speech defense to laws prohibiting facially discriminatory employment practices,[7] on the basis that that case involved commercial speech. Dkt. No. 58 at 35. Commercial speech is entitled to First Amendment protection because it is speech. *E.g.*, *Central Hudon Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557 (1980). Unlike web design or photography, hiring or continuing to employ someone is not expressive conduct protected by the First Amendment. *Slattery*, 61 F.4th at 291. Government regulation of an employer's "personnel decisions" is not "itself a regulation of speech."

---

[7] Contrary to what Defendant argues, Dkt. No. 58 at 36-37, *Greater Philadelphia Chamber of Commerce v. City of Philadelphia*, 949 F.3d 116 (3d Cir. 2020), has no bearing on this case. This Court has already ruled that Defendant's prohibition against hiring individuals who are in same-sex marriages is facially discriminatory. Dkt. No. 44.

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT -** 14
2:21-CV-00920-JLR

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798
(206) 682-6711

*Id.* at 292. "It is possible to find some kernel of expression in almost every activity…but such a kernel is not sufficient to bring the activity within the protection of the First Amendment." *City of Dallas v. Stanglin*, 490 U.S. 19, 25 (1989). Because compliance with Title VII and the WLAD will not require Defendant to engage in compelled speech, *303 Creative LLC v. Elenis*, 143 S. Ct. 2298 (2023), has no application here.

## IV.   CONCLUSION

This Court should grant Plaintiff's Renewed Motion for Summary Judgment on Affirmative Defenses in its entirety.

RESPECTFULLY SUBMITTED, this 20th day of October 2023.

**FRANK FREED SUBIT & THOMAS LLP**

By:  /s/ Michael C. Subit
Michael C. Subit, WSBA No. 29189
705 Second Avenue, Suite 1200
Seattle, Washington 98104
Phone: (206) 682-6711
Fax:  (206) 682-0401
Email:  msubit@frankfreed.com

I certify this memorandum contains 5,198 words in compliance with Dkt. Nos. 21 & 51.

**NISAR LAW GROUP, P.C**.

By:  /s/ Casimir Wolnowski
Casimir Wolnowski
60 East 42nd Street, Suite 4600
New York, New York 10165
Phone: (646) 889-1007
Fax:  (516) 604-0157
Email : cwolnowski@nisarlaw.com
*Admitted Pro Hac Vice*

*Attorneys for Plaintiff*

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT -** 15
2:21-CV-00920-JLR

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798
(206) 682-6711